53 N.J. 230 (1969)
250 A.2d 1
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HERBERT LEE CAMPBELL, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued November 4, 1968.
Decided February 3, 1969.
*231 Mr. James R. Zazzali, Assistant County Prosecutor, argued the cause for appellant (Mr. Joseph P. Lordi, County Prosecutor of Essex County, attorney).
Mr. Harvey Weissbard argued the cause for respondent (Messrs. Querques & Isles, attorneys).
The opinion of the court was delivered by JACOBS, J.
The defendant's conviction of possession of lottery slips was reversed by the Appellate Division on the ground that the evidence was the product of an illegal search. 97 N.J. Super. 435 (1967). We granted certification on the State's application. 51 N.J. 388 (1968).
While on motorcycle duty, Officer Delaney of the Newark Police Department observed the defendant driving a car with only one headlight. In response to the officer's direction, the defendant pulled over to the curb. He was asked for his driver's license and registration certificate but "he could not produce a license or any substantial identification at that time." When asked whose car it was he said "he didn't know" and that he had "borrowed it from some fellow *232 in a garage on Avon Avenue." At this point the officer told him he was being arrested and called for a radio car. When the radio car arrived and just before the defendant was placed in it for transport to the police precinct, the officer gave him what he called a "pat-down". He felt a bulge, put his hand in the pocket where the bulge was located, and pulled out a large envelope which contained smaller envelopes and lottery slips. The pat-down, in the officer's language, was "to check for weapons" and to make sure the defendant was not "carrying anything dangerous."
Upon his arrest, the defendant was charged with violations of R.S. 39:3-56 (lack of a lighted headlight), R.S. 39:3-29 (lack of possession of driver's license and registration certificate) and R.S. 39:3-10 (lack of driver's license). He was later indicted for unlawfully and knowingly having "in his possession certain slips, papers and memoranda pertaining to the business of a lottery or lottery policy so-called, contrary to the provisions of N.J.S. 2A:121-3." Following the return of the indictment, he moved to suppress the lottery slips which had been taken from his person at the time of his arrest. His motion was denied and, after a waiver of jury trial, he was tried before Judge Hayden and was found guilty. In reversing the conviction, the Appellate Division took the position that while the officer had the right to pat-down for weapons he had no right to remove the envelope and inspect its contents. It relied upon the limitations voiced in the "stop and frisk" cases such as State v. Terry, 5 Ohio App.2d 122, 214 N.E.2d 114 (1966), aff'd, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) though those cases dealt with situations, unlike the one before us, where there was no arrest or probable cause for arrest at the initiation of the frisk or pat-down. See State v. Dilley, 49 N.J. 460 (1967).
In Terry the Supreme Court upheld a stop and frisk for weapons in circumstances which made such police conduct reasonable though there was no antecedent arrest or probable cause for arrest. In the course of his opinion for the Court, *233 Chief Justice Warren differentiated "a search incident to an arrest" from the more limited search for dangerous weapons which is the hallmark of the stop and frisk, saying:
The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964), is also justified on other grounds, ibid., and can therefore involve a relatively extensive exploration of the person. A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Warden v. Hayden, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782, 794 (1967) (Mr. Justice Fortas, concurring). Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion. 392 U.S. 1, 25-26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908.
See also State v. Mark, 46 N.J. 262, 271 (1966); State v. Boykins, 50 N.J. 73, 77 (1967).
The fourth amendment, in expressing the constitutional guarantee against unwarranted searches and seizures, balances the rights of the individual and society and embodies the acknowledged test of reasonableness; it is only the unreasonable search and seizure that it condemns. See State v. Davis, 50 N.J. 16, 22 (1967). In its administration, the courts have announced various general principles including the familiar one that a search may be made as an incident to a lawful arrest. In State v. Mark, supra, we noted that such incidental search is customarily justified in the cases by the need of seizing any weapons which the defendant might use to assault the arresting officer or to effect an escape and by the further need for preventing the destruction of any incriminating evidence on the defendant's person or under his immediate control. 46 N.J., at 272. And we held that under the circumstances of the arrest there, the removal of the prisoner's clothing at the jailhouse for examination and for inventorying of its contents was not unreasonable or violative *234 of any constitutional rights. 46 N.J., at 277-279; see Cotton v. United States, 371 F.2d 385, 392-393 (9th Cir. 1967); Burroughs v. United States, 236 A.2d 319 (D.C. Ct. App. 1967); Arabia v. State, 82 Nev. 453, 421 P.2d 952 (1966).
Earlier decisions broadly applied the foregoing principles to all custodial arrests including those for traffic violations. See State v. Deitz, 136 Wash. 228, 239 P. 386 (1925); People v. Davis, 247 Mich. 536, 226 N.W. 337 (1929); Scott v. State, 84 Okl. Cr. 171, 180 P.2d 196 (Ct. Crim. App. 1947); Rucker v. State, 225 Ind. 636, 77 N.E.2d 355 (1948); see also Simeone, "Search and Seizure Incident to Traffic Violations," 6 St. Louis Univ. L.J. 506, 511-512 (1961); Agula, "A Reply to Professor Simeone," 7 St. Louis Univ. L.J. 1 (1962); Notes, 1959 Wis. L. Rev. 347, 4 Willamette L.J. 247 (1966). More recent decisions, stressing the ultimate constitutional test of reasonableness, have declined to sanction general searches as automatically incidental to arrests for traffic infractions of minor nature. See People v. Marsh, 20 N.Y.2d 98, 281 N.Y.S.2d 789, 228 N.E.2d 783 (1967); Lane v. Commonwealth, 386 S.W.2d 743, 10 A.L.R.3d 308 (Ky. 1964); cf. People v. Watkins, 19 Ill.2d 11, 166 N.E.2d 433, cert. denied, 364 U.S. 833, 81 S.Ct. 57, 5 L.Ed.2d 59 (1960); State v. Quintana, 92 Ariz. 267, 376 P.2d 130 (1962); Shelton v. State, 3 Md. App. 394, 239 A.2d 610 (1968); see also State v. Scanlon, 84 N.J. Super. 427, 434-435 (App. Div. 1964); People v. Gonzales, 356 Mich. 247, 97 N.W.2d 16 (1959).
In People v. Watkins, supra, the defendant was arrested for a parking violation. He was searched and some policy slips were taken from his person; his motion to suppress them was denied and he was convicted on a charge of possession. The prosecution contended that the search was valid as an incident to a lawful arrest. This contention was rejected though the search was upheld as reasonable under the circumstances, apart from the arrest. In the course of his *235 opinion, Justice Schaefer pointed out that some traffic violations might justify a search whereas others might not; illustratively, he noted that the total absence of license plates "could reasonably suggest a serious violation of the law, as could an obscured license plate upon a car being driven in the early morning hours." 166 N.E.2d, at 437. He expressed the thought that since the true test is reasonableness, each case must necessarily turn on its own facts rather than on any hard and fast rule of supposedly simple and uniform application; he put it in the following terms:
The constitution prohibits only unreasonable searches; it permits those that are reasonable. The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems. A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide. Other courts are in accord. They have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted. Cf. People v. Blodgett, 46 Cal.2d 114, 293 P.2d 57; Elliott v. State, 173 Tenn. 203, 116 S.W.2d 1009; People v. Gonzales, 356 Mich. 247, 97 N.W.2d 16; See: Einhorn, The Exclusionary Rule in Operation, 50 J. Crim. L., C. & P.S. 144, 160 (1959); 1959 Wis. L. Rev. 347. 166 N.E.2d at 436-437.
In State v. Quintana, supra, the defendant was stopped for speeding. In response to an inquiry, he said that the car was owned by "a friend" who lived "up here a ways." He acted nervously and the officers, suspecting that the car was stolen, searched the defendant for a weapon and found a package containing heroin in his clothing. He was convicted of illegal possession of narcotics and, on appeal, sought to have the conviction set aside on the ground that the seizure of the heroin was illegal. In sustaining the conviction the court recognized that, while a lawful arrest for a minor *236 traffic violation may not, in and of itself, justify a search, the totality of the circumstances may render a search reasonable and therefore constitutional. 376 P.2d, at 131. With respect to the actual case before it, the court said:
The reasonable thing for the officers to have done upon having such suspicion was to take necessary measures for preventing injury to themselves or others and to close any possible avenue of escape in the event a serious crime had been committed by the person arrested. People v. Lewis, 187 Cal. App.2d 373, 9 Cal. Rptr. 659 (1960); People v. Watkins, supra; Brinegar v. State, 97 Okl. Crim. 299, 262 P.2d 464 (1953). This they did by searching the man to see if he was armed. The fact that they found something different than that for which they searched does not render a valid search invalid, People v. Gonzales, supra; Self v. State, Fla., 98 So.2d 333 (1957); Harris v. United States, supra [331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399]; and since the search was valid so was the seizure, State v. Pelosi, 68 Ariz. 51, 199 P.2d 125 (1948). The evidence against appellant obtained by this search and seizure was legally obtained. It was not error for the court to deny the motion to suppress or to overrule the objection to the admission of such evidence. 376 P.2d at 131-132.
In State v. Boykins, supra, the defendant and others were in a car being driven at a high speed and in a reckless manner. Officers told the driver, who had stopped for a red light, to pull to the curb. When the light changed, the driver took off and after a chase during which pedestrians were narrowly missed and warning shots were fired, the car came to a stop. A search of the car revealed an open knife and an envelope containing marijuana. The defendant obtained a pretrial order suppressing the evidence but the order was set aside by this Court. In the course of his opinion, the Chief Justice noted that while not every traffic offense warrants a vehicle search, "a traffic violation as such will justify a search for things related to it"; thus "if the operator is unable to produce proof of registration, the officer may search the car for evidence of ownership"; if the officer "has reason to believe the driver is under the influence of liquor or drugs, he may search the car for alcohol or narcotics"; and if the officer decides to take the traffic violator into custody rather *237 than to issue a summons, "he may search the occupants and the car for weapons if he reasonably believes it necessary for his own protection or to prevent an escape." 50 N.J., at 77. Without pursuing the issue of whether the traffic violation as such in Boykins justified the search, this Court found that the extraordinary conduct of the occupants of the car evidenced the probability that they had contraband or instruments or fruits of crime on their persons or in the car, and that consequently search of their persons and the car was reasonable though at that stage the officers knew of "no specific offense, other than a traffic violation, upon which an arrest could be made." 50 N.J., at 78.
Applying the foregoing, we are entirely satisfied that the search and seizure by Officer Delaney were not unreasonable acts and that the conviction of possession of lottery slips was not based on illegally obtained evidence. When the officer saw the car with only one headlight he properly directed its driver to pull over to the curb. If, in response to his request, a driver's license and registration certificate had been produced, he presumably would have issued a summons and no more. When the driver, unable to produce any license or suitable identification, told the officer that he didn't know whose car it was and that he had borrowed it from some fellow in a garage on Avon Avenue, the officer was left with little choice but to arrest him. That the actual arrest was a valid one is not disputed. See R.S. 39:5-25. Indeed, at that point the officer not only had observed several traffic violations but had sufficient basis for believing that the car might have been taken without permission of its owner. We do not at all subscribe to the Appellate Division's notion that this latter factor was completely negated by the ancient vintage and poor condition of the car. 97 N.J. Super., at 445.
In any event, the officer acted reasonably in making the arrest and in calling for the radio car to transport the defendant to the police precinct. He also acted reasonably and with appropriate caution in searching the defendant for weapons and, as he said, to see whether he was carrying *238 anything dangerous. See State v. Dilley, supra, 49 N.J., at 463; State v. Boykins, supra, 50 N.J., at 77. When he felt the bulge and removed the envelope, he understandably and properly opened it to find out what was in it. It might well have contained a weapon, such as a thin knife or blade, or materials identifying the defendant or the owner of the car or both. Since the search itself was clearly reasonable and lawful, its product thus obtained was not unlawfully seized though it proved to be a non-weapon unrelated to the car and the traffic offenses. See State v. Quintana, supra, 376 P.2d, at 131. Any contrary holding here would interfere with the fair enforcement of the law and would go far beyond the needs of the fourth amendment. See Harris v. United States, 331 U.S. 145, 154-155, 67 S.Ct. 1098, 91 L.Ed. 1399, 1408 (1947); United States v. Lee, 308 F.2d 715, 718 (4th Cir. 1962), cert. denied, 372 U.S. 907, 83 S.Ct. 720, 9 L.Ed.2d 717 (1963); Williams v. Eckle, 173 Ohio St. 410, 183 N.E.2d 365, 367, cert. denied, 371 U.S. 881, 83 S.Ct. 154, 9 L.Ed.2d 118 (1962); People v. Hoffman, 24 A.D.2d 497, 261 N.Y.S.2d 651, 654 (Sup. Ct. 1965); Baca v. People, 160 Colo. 477, 418 P.2d 182, 183 (1966); Commonwealth v. Bowlen, 351 Mass. 655, 223 N.E.2d 391, cert. denied sub nom. Gilday v. Massachusetts, 389 U.S. 916, 88 S.Ct. 250, 19 L.Ed.2d 268 (1967).
Reversed.
For reversal  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For affirmance  None.