180 N.J. Super. 452 (1981)
435 A.2d 569
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES WILCOX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 28, 1981.
Decided August 12, 1981.
*453 Before Judges KING, FRANCIS and FURMAN.
*454 Donald T. Thelander, Assistant Deputy Public Defender, argued the cause for appellant (Stanley C. Van Ness, Public Defender, attorney).
Katherine A. Smith, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General, attorney; John J. Degnan, former Attorney General).
The opinion of the court was delivered by FURMAN, J.A.D.
After his conviction of possession of heroin with intent to distribute on a retraxit plea of guilty, defendant appeals under R. 3:5-7(d) from the denial of his motion to suppress evidence.
A suppression hearing was held and factual findings reached by Judge Barlow, who found Police Detective Hunt's testimony to be "the credible version of the facts and circumstances." Hunt, who had been a member of the Ewing Township police force for nine years, testified as follows.
A search warrant had been issued for the person of Daniel Roberson, his 1973 Chevrolet car and his business known as the Style Machine, a barbershop in Ewing Township, upon information that Roberson was involved in the distribution and sale of narcotics. Hunt and another police officer were maintaining surveillance of the barbershop. Several other police officers were available nearby for backup duty. Shortly after one o'clock on the afternoon of June 1, 1977, Roberson drove up in his 1973 Chevrolet and parked across the street from the barbershop. There was one passenger in his car, later identified as defendant. Roberson entered the barbershop, while defendant entered a sandwich shop next door.
Upon execution of the search warrant inside the barbershop, packets of heroin and cocaine were seized on Roberson's person. Hunt observed defendant standing by the door of the barbershop. He went outside and asked defendant for his identification. Defendant acted nervous. He gave his name as Bruce Wilcox, in fact his brother's name. Hunt saw what appeared to be the bulge of a wallet in one of defendant's pants pockets. He *455 asked if defendant had any identification in his wallet. Defendant took the wallet out. As defendant was thumbing through it Hunt observed an identification for Charles Meakins,[1] who he knew was in jail.
Hunt then searched defendant and seized 18 individually wrapped packets of heroin, a packet of quinine and number slips from a pants pocket and a shirt pocket. As a consequence, Hunt arrested defendant.
The police officers subsequently searched Roberson's car and found a handgun, more narcotics and some of defendant's clothing. But the seizure of incriminating evidence from Roberson's car cannot validate retroactively the search of defendant's person. Cf. State v. DeSimone, 60 N.J. 319 (1972).
In his testimony Hunt never stated any apprehension that defendant might be armed with a concealed weapon and that his own safety was endangered. The decisional authorities upholding the constitutionality under the Fourth Amendment of protective frisks are thus inapplicable. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State in the Interest of H.B., 75 N.J. 243 (1977).
We are faced with the issue of the constitutionality under the circumstances of a police stop of defendant, demand for identification and search of his person, without an arrest and without his consent, after he had shown an identification which was known by the police detective to be false and may reasonably have been suspected by him to have been stolen, as well as the wallet which contained it.
No United States Supreme Court opinion is squarely in point. Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), upholds as reasonable a "brief stop of a suspicious individual in order to determine his identity ... in *456 light of the facts known to the officer at the time." See, also, Michigan v. Summers, ___ U.S. ___, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).
In our view the brief detention of defendant to ascertain his identity was a reasonable police investigatory procedure after the seizure of narcotics on Roberson's person, based upon defendant's arrival as the sole passenger in Roberson's car and his lingering in the immediate vicinity.
State v. Flynn, 92 Wis.2d 427, 285 N.W.2d 710 (Sup.Ct. 1979), sustains the constitutionality of seizure of a wallet and search of its contents for identification. Defendant Flynn was in the company late at night of someone who fitted the description of a suspect in a burglary reported only half an hour earlier. He was stopped, asked for his identification and refused to give it. The Wisconsin Supreme Court, relying in part upon a statute permitting temporary questioning without arrest, said:
Indeed, unless the officer is entitled to at least ascertain the identity of the suspect, the right to stop him can serve no useful purpose at all. The suspect need only wait for what may be presumed to be a reasonable time, and then proceed on his way. Ignorant of even the person's name, the officer must either attempt to follow the suspect in the hope that he will discover some clue as to his identity, or surrender to potential lead and continue his investigation along other lines. Particularly where the officer is confronted with a number of potential suspects, limiting his options in this manner could have a perplexing effect on law enforcement efforts.
........
To accept defendant's contention that the officer can stop the suspect and request identification, but that the suspect can turn right around and refuse to provide it, would reduce the authority of the officer granted by sec. 968.24, Stats., and recognized by the United States Supreme Court in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921 [32 L.Ed.2d 612] (1972), to identify a person lawfully stopped by him to a mere fiction. Unless the officer is given some recourse in the event his request for identification is refused, he will be forced to rely either upon the good will of the person he suspects or upon his own ability to simply bluff that person into thinking that he actually does have some recourse. In our view neither of these alternatives is satisfactory, nor is either called for under the Fourth Amendment. [285 N.W.2d at 716-718]
*457 See, also, 3 LaFave, Search and Seizure (1981 pocket part), § 9.4.
Defendant on the appeal before us did not refuse to identify himself. He gave a name, but Detective Hunt an experienced police officer, did not accept this verbal identification as trustworthy and asked for identification from defendant's wallet. Defendant then showed a false identification. The alternatives before Hunt were to pursue his investigation by searching defendant for a valid identification or to let him go without ascertaining his identity, despite reasonable grounds to suspect him of theft of Charles Meakins's driver's license and wallet, as well as of complicity with Roberson in the distribution and sale of narcotics.
The Fourth Amendment protects against unreasonable searches and seizures  that is, police excesses. As stated by the United States Supreme Court in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979):
The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. [441 U.S. at 559, 99 S.Ct. at 1884]
We conclude that Detective Hunt's search of defendant's person was not an unreasonable intrusion in view of the evident need to establish defendant's identity in the investigation of a suspected crime or crimes and that the search and seizure challenged on defendant's motion to suppress were reasonable under all the circumstances. Nor is it material, contrary to defendant's argument, that Hunt acknowledged on cross-examination an intention to search defendant's person when he first approached him; his search was justified when it was made, in accordance with his reasonable perception of his duty as a police officer to ascertain defendant's identity.
We therefore affirm.
NOTES
[1] This identification was stipulated to be a motor vehicle driver's license at oral argument before us.