Argued and submitted May 19, affirmed December 4, 1986, reconsideration denied
January 16, petition for review denied February 10, 1987 (302 Or 614)

## STATE OF OREGON,
### *Appellant,*

*v.*

## JAMES TERRON SMITH,
### *Respondent.*

### (10-85-01364; CA A37211)
729 P2d 10

Kendall M. Barnes, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

David J. Phillips, Eugene, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

**YOUNG, J.**

The state appeals a pretrial order suppressing evidence resulting from the warrantless search of defendant's person and his vehicle. The search and seizure occurred contemporaneously with defendant's arrest for driving while suspended (DWS). He was later also charged with unlawful possession of a controlled substance, ORS 475.992(4)(b), which is the charge underlying this appeal. We conclude that the search and seizure violated Article I, section 9, of the Oregon Constitution, because it was not permissible incident to defendant's DWS arrest, and affirm.

Around 8 a.m. on June 23, 1984, defendant's erratic driving drew the attention of officers Frambes and Clayton. After he ran a red light, the officers stopped him. Frambes asked to see his driver's license and vehicle registration. Defendant replied that he did not have a driver's license and volunteered that his license had been suspended during the spring. Defendant was dressed in a one-piece woman's bathing suit with men's underwear down around his ankles. A pair of pants was on the seat next to him. At Frambes' request, defendant got out of the vehicle and, with Frambes' permission, put on the pants. After Frambes gave defendant his *Miranda* rights, he asked defendant for his name. Defendant said that he was "James Terron Smith" and gave a birth date. It appears that, at that point, Frambes told Clayton that defendant had stated that his license was suspended and that he had no identification. Without further inquiry, Clayton searched the interior of the vehicle. The search produced drugs and drug paraphernalia, together with a bill of sale for the vehicle in the name of "James Terron Smith."[1]

While Clayton was searching, Frambes ran a radio check with the Motor Vehicle Department to verify defendant's stated name and birth date. The name and birth date matched with a James Terron Smith whose license had been suspended the previous April. The height and weight listed for Smith also matched defendant's build.

Clayton testified that the only reason that he

---

[1] The search was intensive. None of the drug and paraphernalia were in plain view. Some evidence was found under the front seat, between the cushions of the front seat and on the back seat.

searched the vehicle was to look for identification. He believed that defendant was trying to "divert my suspicions," by volunteering that he was suspended. Clayton explained, "I wasn't thinking suspended; I was thinking wanted." Clayton suspected that defendant was attempting to avoid producing a driver's license, which would reveal grounds for arrest on some more serious charge. The trial court granted defendant's motion to suppress.

■      The issue is whether the warrantless search of defendant's vehicle for identification is permissible incident to his arrest.[2] A search incident to an arrest is recognized as one of the narrow exceptions to the warrant requirement of Article 1, section 9.[3] *State v. Lowry,* 295 Or 337, 345, 667 P2d 996 (1983), *overruled on other grounds, State v. Owens,* 302 Or 196, 729 P2d 524 (1986); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). A valid arrest of a driver, however, does not by itself justify a warrantless search of the vehicle. The search must be justified by the circumstances surrounding the arrest. *State v. Caraher, supra,* 293 Or at 757. We restated the rule to test the constitutional soundness of a warrantless search incident to an arrest in *State v. Fesler,* 68 Or App 609, 612, 685 P2d 1014, *rev den* 297 Or 547 (1984):

> "[A] search incident to an arrest does not require probable cause beyond a basis for the arrest itself. It must, however, be reasonable in scope and, when it is not for the purpose of protecting the officer's safety or protecting the destruction of evidence, it must be *related to the crime for which the defendant was arrested. State v. Lowry, [supra]; State v. Caraher, [supra]; State v. O'Neal,* 251 Or 163, 444 P2d 951 (1969); *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984)." (Emphasis supplied; footnote omitted.)

*See State v. Owens, supra.*

---

[2] The state did not argue at trial or on appeal that the search can be justified on the basis of probable cause and exigent circumstances. *See State v. Brown,* 301 Or 268, 721 P2d 1357 (1986); *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986). Neither does it advance a "progressive probable cause" analysis. *See State v. Flores,* 68 Or App 617, 630, 685 P2d 999 (1984).

[3] Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

■ The state does not argue that the officers searched to protect themselves or to prevent the destruction of evidence. The issue here is what "related to the crime for which defendant was arrested" means. Citing *Fesler,* the state argues that, if there is probable cause to arrest a defendant for some crime, and if the officer suspects for any reason that the defendant has lied about his identity, then the identification evidence "relates to" the crime charged in that it would further serve to identify the defendant.

The state's reliance on *Fesler* is misplaced. The defendant there was arrested for giving a false name and for driving while suspended. *Fesler* held that the search for identification related in two ways to the crime of giving a false name. First, correctly identifying the defendant would relate to whether he had lied about his identity. Second, hiding the wallet would tend to show that the defendant knew that his license was suspended, which in turn would explain his motives for giving a false name. In the present case, however, the officers did not have probable cause to arrest defendant for giving a false name;[4] they only had probable cause to arrest for DWS. *Fesler* did not hold that the identification evidence would tend to prove the DWS charge. The state does not argue that such a relationship exists.

Affirmed.

---

[4] The state correctly concedes that the officers had less reason to disbelieve defendant than did the officers in *Fesler.* However, the state goes on to argue

"that the magnitude of the reasons for disbelief should not be of controlling constitutional significance, and that the reasons a police officer gives for stating that he did not believe that a driver had truthfully identified himself should only be relevant to the factual question of whether the police officer's claimed disbelief is candid and sincere, or, instead, merely a pretext."

The state misses the point. The "magnitude of the reasons for disbelief" *is* of constitutional significance, because the existence of probable cause to arrest for giving a false name turns on it. Because "the magnitude of the reasons" here did not rise to the level of probable cause to arrest for giving a false name, the officers could not justify the search for identification as "related to" that crime.