STATE OF NORTH CAROLINA v. WILLIE FRANKLIN GREEN

No. 9012SC277

(Filed 21 May 1991)

1. **Appeal and Error § 447 (NCI4th)— standing to challenge constitutionality of search and seizure—no raising of issue for first time on appeal**

   The State was precluded from raising for the first time on appeal the issue of defendant's lack of standing to allege a violation of his Fourth Amendment right to be free from unreasonable searches and seizures, though defendant did not own the car which was searched and which yielded controlled substances.

   **Appeal and Error § 159.**

2. **Searches and Seizures § 9 (NCI3d)— warrantless search of glove compartment—illegal search and seizure**

   The trial court erred in denying defendant's motion to suppress cocaine and heroin seized from his car as the fruit of an illegal search and seizure where the officer who had stopped defendant because his car was weaving had already frisked defendant and the car for weapons and identification and had ceased to search for weapons at the time he opened the glove compartment, and opening the glove compartment amounted to more than minimal intrusion.

   **Am Jur 2d, Searches and Seizures §§ 16, 33, 58, 103.**

   **Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.**

APPEAL by defendant from judgments entered 13 December 1989 by *Judge George R. Greene* in CUMBERLAND County Superior Court. Heard in the Court of Appeals 13 November 1990.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Ralph B. Strickland, Jr., for the State.*

*Public Defender Mary Ann Tally, by Assistant Public Defender Michael G. Howell, for defendant-appellant.*

PARKER, Judge.

Indicted for possession with intent to sell or deliver heroin, possession with intent to sell or deliver cocaine, driving while impaired, and driving without an operator's license, defendant moved to suppress evidence obtained as a result of the search of his automobile. From an adverse ruling, defendant gave notice of intent to appeal pursuant to N.C.G.S. § 15A-979(b) and then entered a plea of guilty to all four charges. For the offense of possession with intent to sell or deliver heroin the court sentenced defendant to a term of imprisonment of four years. For the offense of possession with intent to sell or deliver cocaine, defendant was sentenced to a term of imprisonment of six years, to begin at the expiration of the four year sentence and suspended for five years upon condition that defendant remain on supervised probation. For the offenses of driving while impaired and without an operator's license, defendant was sentenced to a term of imprisonment of six months, suspended concurrently with his six year sentence. Defendant appeals from the denial of his motion to suppress and the entry of these judgments.

The facts giving rise to this appeal are uncontroverted. Around 11:45 a.m. on 9 January 1989, Trooper Kevin Rittenhouse, a seven year veteran of the North Carolina Highway Patrol, was on routine patrol on North Carolina Highway 87, south of Fayetteville. A light rain was falling. He saw a white 1981 Toyota automobile travelling about fifty miles per hour in the left southbound lane of the four lane highway. As he approached the car from behind, it weaved into the right southbound lane twice. No other traffic was on the highway.

Suspecting the driver was impaired, Trooper Rittenhouse activated his light and siren. Twice the driver leaned over toward the front passenger seat, but louvers over the rear window prevented

STATE v. GREEN

[103 N.C. App. 38 (1991)]

Rittenhouse from seeing exactly what the driver was doing. The driver, who had returned to the left southbound lane, pulled over to the left and brought his car to a stop in the grassy median. At the suppression hearing, Rittenhouse testified he stopped the car only because of its weaving. He had no information that the car was stolen; he had received no tips, broadcasts, or other information about the driver; nor did he recognize the car.

Trooper Rittenhouse parked his patrol car behind the Toyota and approached the driver, who sat completely still. When the driver, later identified as the defendant, Willie F. Green, rolled down his window, Rittenhouse explained he had stopped defendant for weaving and asked to see his driver's license and proof of registration. Defendant replied that he had swerved because he spilled a drink on his trousers and that he did not have his wallet or license with him. He did not carry them about because he had the habit of losing them. Although defendant was holding a soft drink bottle, Rittenhouse did not see a wet spot on his trousers or the car seat.

Trooper Rittenhouse asked defendant to get out of the car and step away from it; defendant followed these instructions and submitted to a pat-down search. Feeling an object in defendant's pocket, Rittenhouse asked what it was. Defendant answered it was money, produced it for inspection, and was permitted to return it to his pocket. Rittenhouse asked defendant to step further away from the car while he looked on the floor and around the driver's seat for a weapon or proof of identification.

Although he found nothing, Trooper Rittenhouse still thought defendant had identification with him. Rittenhouse asked defendant to sit in the front passenger seat of the patrol car while he determined the status of defendant's license. He asked defendant for the name, date of birth, and address on his driver's license. Defendant stated, "Frederick Green, May 13, 1952, 406 Clay Street, Wilmington, North Carolina." Rittenhouse radioed this information, with the car's tag number, to the Elizabethtown patrol station for verification.

At this point, Trooper Rittenhouse had observed defendant, looked in his car, and talked with him briefly. The defendant looked orderly and there was nothing unusual about his appearance or speech. His eyes were red and glassy; but never having seen defendant before, Rittenhouse did not know the usual appearance

STATE v. GREEN

[103 N.C. App. 38 (1991)]

of his eyes. Rittenhouse had detected no odor of alcohol or drugs on or about defendant or his car and had seen no weapons, alcoholic beverage containers, or contraband. After defendant sat in his patrol car, Rittenhouse no longer suspected him of driving while impaired.

After no more than ten minutes, having received no response to his call for information, Trooper Rittenhouse again called the patrol station and was told to stand by. He asked defendant his age, and defendant said he was thirty-five. Based on the birthdate defendant had furnished earlier, Rittenhouse suspected defendant had been untruthful about all the information he supplied. Having asked defendant to remain in the patrol car, Rittenhouse walked to the passenger side of the Toyota, intending to look for a driver's license, identification, or proof of registration. First he opened the door; then he opened the glove box. He discovered two plastic bags containing what was later identified as heroin and cocaine.

Trooper Rittenhouse returned to the patrol car, arrested the defendant for possession of controlled substances, handcuffed him, and read him the *Miranda* rights. After he called for assistance, Rittenhouse asked defendant several questions and elicited the information that his license was expired and he had used controlled substances that morning. Rittenhouse received no other information about the status of defendant's license. Based on defendant's statements, Rittenhouse decided to charge him with driving while impaired and without an operator's license.

Other patrol members were summoned and a drug dog sniffed defendant's car; no controlled substances were found other than those Trooper Rittenhouse had seen. Later Rittenhouse found defendant's North Carolina identification card between the passenger seat and console of the Toyota. The card indicated defendant's name was Willie Franklin Green, his date of birth was 14 May 1953, and he resided at 109 North Seventh Street, Wilmington, North Carolina. Rittenhouse later determined the Toyota was registered to Mendell Harper, who resided at 109 Seventh Street, Wilmington, North Carolina; but defendant was not charged with improper registration.

[1] The State attempts to raise for the first time before this Court the issue of defendant's lack of standing to allege a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. State now contends that because defendant did not own the 1981 Toyota, he had no legitimate expectation of privacy

in the car or its contents. *See Rakas v. Illinois,* 439 U.S. 128, 58 L.Ed.2d 387 (1978). Since "[t]here is no affirmative indication in the record that the State intended to, or tried to, rely upon defendant's lack of an expectation of privacy in the [car] to defeat his Fourth Amendment claim at the suppression hearing in the lower court," the State is precluded from raising the argument before this Court. *State v. Cooke,* 306 N.C. 132, 138, 291 S.E.2d 618, 621-22 (1982).

[2] Defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress the cocaine and heroin seized from his car as the fruit of an illegal search and seizure. We agree.

The court below conducted a hearing on the motion to suppress pursuant to N.C.G.S. § 15A-977(d). In its final order the court concluded as follows:

> 1. Trooper Rittenhouse had a reasonable belief that the defendant was driving without a license.

> 2. Important governmental interests in protecting the citizens of this State against unlicensed drivers outweighs [sic] the minimal intrusion into the defendant's privacy interest in the glove compartment of the vehicle.

> 3. Trooper Rittenhouse used the least intrusive means to determine ownership of the vehicle and to find identification of the defendant and vehicle identification.

> 4. Based on the information known to Trooper Rittenhouse at that time, Trooper Rittenhouse had a duty to investigate further to find out the identification of this defendant.

> 5. [T]he search of the glove compartment was a reasonable search within the meaning of the United States Constitution and the North Carolina Constitution.

Under General Statutes, Chapter 20, Article 2, operating a motor vehicle without being licensed by the Division of Motor Vehicles is a misdemeanor. N.C.G.S. §§ 20-7(a), (o) (1989). This same statute also makes failure to carry one's license at all times when engaged in operating a motor vehicle a misdemeanor. N.C.G.S. §§ 20-7(n), (o) (1989). Members of the State Highway Patrol are authorized to arrest without warrant any person who in their presence is engaged in the violation of any laws of the State.

regulating travel and the use of vehicles upon the highways. N.C.G.S. § 20-188 (1989).

Under Article 3 of Chapter 20 it is unlawful to operate an unregistered vehicle. N.C.G.S. § 20-111(1) (1989). A registration card must be carried at all times in the vehicle to which it refers. N.C.G.S. § 20-57(c) (1989). Members of the highway patrol have the power of peace officers for the purpose of enforcing the provisions of Article 3. Patrol members may (i) arrest on sight any person found violating the provisions of Article 3 and (ii) stop any motor vehicle on a North Carolina highway to determine whether the vehicle is being operated in violation of any provision of Article 3. N.C.G.S. § 20-183(a) (1989).

Nevertheless, the power to stop a vehicle does not include power to search. *State v. Blackwelder,* 34 N.C. App. 352, 355, 238 S.E.2d 190, 191-92 (1977). Persons stopped pursuant to § 20-183 may not be indiscriminately searched or arrested without probable cause, in contravention of recognized constitutional principles. *State v. Allen,* 282 N.C. 503, 511, 194 S.E.2d 9, 15 (1973). Even "the power to arrest does not necessarily include the authority to search a motor vehicle in the absence of probable cause." *State v. Braxton,* 90 N.C. App. 204, 208, 368 S.E.2d 56, 59 (1988).

The Fourth Amendment by its terms prohibits unreasonable searches and seizures; but there is no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails. A police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, justifiably warrant the intrusion. This test generally means searches must be conducted pursuant to a warrant backed by probable cause. *New York v. Class,* 475 U.S. 106, 116-17, 89 L.Ed.2d 81, 92 (1986).

In discussing and applying principles of Fourth Amendment law, this Court has said:

[An] exception to the rule against warrantless searches was approved in *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). This so-called "stop and frisk" rule allows an officer investigating suspicious behavior by an individual at close range to determine whether the suspicious person is armed and to neutralize any threat if the officer has a reasonable belief that the suspect is armed or presently

dangerous. This "stop and frisk" exception to unreasonable search and seizure has been extended to automobiles. *Michigan v. Long*, 463 U.S. 1032, 77 L.Ed.2d 1201, 103 S.Ct. 3469 (1983). In *Long*, the Court acknowledged that investigative detention of persons in automobiles presents a danger to police officers. The Court then held that those areas of a passenger compartment of a motor vehicle where weapons might be hidden may be searched if the facts, coupled with rational inferences drawn therefrom, reasonably warrant an officer's belief that a suspect is dangerous and may gain control of weapons.

*State v. Braxton*, 90 N.C. App. at 208-209, 368 S.E.2d at 58. The *Braxton* court went on to say the facts before it did not warrant the officer's belief that the suspect was dangerous or might gain control of weapons; it was "uncontroverted that defendant could not obtain any weapon or other item from the car." *Braxton*, 90 N.C. App. at 209, 368 S.E.2d at 59.

The *Class* court considered whether the action of a police officer, who in order to check a Vehicle Identification Number, reached into the passenger compartment of a vehicle to remove papers obscuring the number after the driver was stopped for a traffic violation, violated the Fourth Amendment. After restating the rule against warrantless searches, the Court cited the exception for searches which have as their immediate object a weapon, in which significant interest in the safety of police officers is considered sufficient justification for warrantless searches based only on a reasonable suspicion of criminal activity. The Court noted that when an officer's safety is less directly served by a detention, something more than objectively justifiable suspicion is necessary to justify an intrusion. Three factors in particular influenced the Court to hold the search at issue was reasonable: (i) "the safety of the officers was served by the governmental intrusion"; (ii) "the intrusion was minimal"; and (iii) "the search stemmed from some probable cause focussing suspicion on the individual affected by the search." *Class*, 475 U.S. at 117-18, 89 L.Ed.2d at 93.

In the case before us safety of an officer was not served by governmental intrusion; Trooper Rittenhouse had already made a *Terry* style frisk of both defendant and the car for weapons and identification and had ceased to search for weapons at the time he opened the glove compartment. The intrusion was not minimal under *Class*; that case explicitly distinguished the opening

of an automobile glove compartment: "The officer did not root about the interior of the respondent's automobile before proceeding to examine the VIN. *He did not reach into any compartments or open any containers.*" *Class*, 475 U.S. at 118, 89 L.Ed.2d at 93 (emphasis added).

An officer's safety, rather than "important governmental interests in protecting a state's citizens against unlicensed drivers," may justify governmental intrusion. Because Trooper Rittenhouse's safety was not at issue and because under *Class*, his intrusion was not minimal, we conclude his search violated Fourth Amendment principles. We, therefore, hold the trial court erred in denying defendant's motion to suppress the evidence against him.

Reversed.

Judges ARNOLD and EAGLES concur.