726 A.2d 294 (1999)
319 N.J. Super. 618
STATE of New Jersey, Plaintiff-Respondent,
v.
Brent D. LARK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1999.
Decided March 30, 1999.
*295 Ivelisse Torres, Public Defender, for defendant-appellant (Paul M. Klein, Deputy Public Defender, of counsel and on the brief).
Thomas V. Manahan, Union County Prosecutor, for plaintiff-respondent (Eileen M. Walsh, Assistant Prosecutor, of counsel and on the brief).
Before Judges MUIR, Jr., EICHEN, and COBURN.
The opinion of the court was delivered by EICHEN, J.A.D.
Defendant Brent D. Lark lost his motion to suppress the evidence of his crime, reserved his right to appeal on that issue, and pleaded guilty to first degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 5(b)(1). In accordance with the terms of the negotiated plea, defendant received a twelve-year sentence of imprisonment, four years to be served without *296 parole. The appropriate statutory penalties were imposed. The only issues raised on appeal are the propriety of the order denying the motion to suppress and the length of the sentence.
We hold that the investigating police officer violated defendant's rights under the Fourth Amendment of the United States Constitution and article I, paragraph 7 of the New Jersey Constitution when, following a motor vehicle stop for a minor traffic violation, he opened the door of defendant's vehicle to search for proof of defendant's identity without probable cause to believe that contraband or instrumentalities of a crime were within or that some criminal activity was afoot. Because we have decided to reverse the order denying defendant's suppression motion, the sentencing issue is moot.
The facts leading to the search and subsequent arrest of defendant are undisputed. On May 22, 1996, at about 12:38 p.m., Berkeley Heights Police Officer Michael Gallaro was on motor patrol when he saw an Acura Legend automobile driving without a front license plate. A computer check indicated the vehicle's registration was valid and that it had not been reported as stolen. Nonetheless, Officer Gallaro stopped the vehicle because of the missing license plate. The driver was defendant Brent D. Lark. Seated beside him was the co-defendant Jason Lewis, who promptly handed the officer a valid registration, insurance card, and his own driver's license.
Defendant told the officer that he had a license to drive, but it was not on him. At Officer Gallaro's request, defendant wrote down on a note pad his name, address, and date of birth, as that information appeared on the supposed license. Officer Gallaro twice checked the validity of the information defendant had given him using his mobile computer and had his headquarters check a third time with its computer. There was no record of a license issued in the name defendant had provided.
Having received what appeared to be false information from defendant, Officer Gallaro became concerned for his safety and called for additional officers. Shortly thereafter, two officers arrived. During further questioning, defendant told Officer Gallaro he could not produce his license because he had been mugged the week before and his wallet containing his license had been stolen. Suspecting defendant had lied to him, Officer Gallaro ordered defendant out of the vehicle and searched him for his license or some form of identification. When none was found, Officer Gallaro "placed him with [his] back-up officers." One of the officers then ordered the passenger to exit the vehicle, so the police could search it for some papers that might identify defendant. Officer Gallaro testified he needed defendant's identification in order to write him a summons and also to determine whether his license had been suspended. He stated that on many occasions he had been able to locate a driver's license inside a car even when the driver claimed that he had no identification. He acknowledged, however, that he could have detained or arrested defendant instead of searching the vehicle.
The passenger exited the vehicle and was patted down by one of the back-up officers. While defendant and the passenger were detained by the other officers, Officer Gallaro opened the driver's side door to search for defendant's wallet or identifying papers. Upon opening the door, Officer Gallaro saw a bag containing drug paraphernalia wedged behind the driver's seat, which he seized. Defendant and the passenger were placed under arrest and seated in separate patrol cars. Officer Gallaro then returned to the vehicle and continued to search the passenger compartment. That search produced six plastic bags containing approximately ten ounces of cocaine.
In a written decision, the Law Division upheld the search. The court determined "it was reasonable for the officer to search the vehicle for a clue to defendant's identity whether that be a license, an envelope or some labeled possession, because he had a well-founded suspicion that the defendant was `hiding something' because he had given a false name." Although the court conceded that it could not "equate this suspicion with probable cause to believe a crime had been committed and that evidence of the crime or contraband would be found in the *297 vehicle," it was satisfied the officer's belief that proof of identity might well be found within the car was reasonable, justifying at least a limited search of the passenger compartment for such proof. The court thus concluded that the "Fourth Amendment is not violated by such reasonable police investigation."
On appeal, defendant argues that his constitutional rights have been violated because there was no probable cause for the search or a valid exception to the probable cause requirement permitting the search and, therefore, the evidence should have been suppressed.
The State counters that the search was valid. It argues that because every operator of a motor vehicle is statutorily required to have a driver's license in his possession and to present the license to a police officer upon request, the officer may conduct a limited search of the passenger compartment of the vehicle for the operator's license or proof of his identity if the operator is unable or unwilling to present his license.
In so arguing, the State relies on the dictum in State v. Boykins, 50 N.J. 73, 232 A.2d 141 (1967), which says a "traffic violation ... will justify a search for things related to it," such as a search for registration if the operator is unable to produce proof of ownership. Id. at 77, 232 A.2d 141. Based on this premise and the fact that defendant lied about his identity, the State maintains the officer was justified in believing that defendant was an unlicensed or suspended driver and that Boykins allowed him to conduct a limited search of the vehicle's passenger compartment for proof of defendant's identity. Implicit in the State's argument is that Boykins established an exception to the probable cause requirement to allow a limited search of a vehicle's interior for driving credentials whenever a driver's identity is in question. The State asserts that because of the lesser expectation of privacy in the interior of a motor vehicle, and the fact that the police could have detained defendant or even arrested him for failing to present his license, the officer's slight intrusion into the vehicle to look for proof of defendant's identity was objectively reasonable. The State also relies on this court's decision in State v. Wilcox, 180 N.J.Super. 452, 435 A.2d 569 (App.Div.), certif. denied, 88 N.J. 491, 443 A.2d 706 (1981), where a search for identification was upheld on less than probable cause.
We reject the State's arguments and reverse. Although there is a lessened expectation of privacy attendant to the interior of an automobile, and although the intrusion here seems minimal, in the absence of one of the recognized exceptions to the constitutional requirement of probable cause and a warrant, the evidence seized must be suppressed. State v. Patino, 83 N.J. 1, 7, 414 A.2d 1327 (1980); State v. Woodson, 236 N.J.Super. 537, 539, 566 A.2d 550 (App.Div. 1989); see also State v. Hill, 115 N.J. 169, 173, 557 A.2d 322 (1989) ("Any warrantless search is prima facie invalid, and the invalidity may be overcome only if the search falls within one of the specific exceptions created by the United States Supreme Court.").
The "automobile exception" to the warrant requirement applies in this case. See State v. Pierce, 136 N.J. 184, 204, 642 A.2d 947 (1994). That notwithstanding, the police must still have probable cause to justify a search of the interior of a motor vehicle. See State v. Young, 87 N.J. 132, 143, 432 A.2d 874 (1981).
Notably, none of the frequently recognized exceptions to the probable cause requirement would allow the search here. For example, there is nothing in the record to suggest that this was a "protective search" for weapons allowing the officer to open the car door out of concern for his safety, or that there was even cause for such concern. See Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L. Ed.2d 1201, 1220 (1983); Pierce, supra, 136 N.J. at 205, 642 A.2d 947; see also Woodson, supra, 236 N.J.Super. at 539, 566 A.2d 550. In addition, defendant had already left the vehicle and was detained by the back-up officers when Officer Gallaro returned to search for proof of his identity. Hence, the passenger compartment was no longer accessible to him. See Pierce, supra, 136 N.J. at 214-15, 642 A.2d 947 (citing Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L. Ed.2d 685, 694 (1969)) (recognizing as *298 constitutionally permissible a contemporaneous search of a vehicle incident to arrest when the vehicle is in arrestee's immediate control).
Moreover, the State does not suggest that the officer observed the bag of vials in "plain view" when defendant first exited the vehicle. See State v. Bruzzese, 94 N.J. 210, 235-39, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L. Ed.2d 695 (1984). Nor do they contend that permission had been requested or given to enter the vehicle. See State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975). Certainly, the State does not argue, for it cannot, that there was any reasonable basis to believe that the vehicle contained contraband or evidence of a crime. See State v. Zutic, 155 N.J. 103, 109, 713 A.2d 1043 (1998).
As previously noted, to support its argument that Officer Gallaro's search for proof of defendant's identity did not offend the Fourth Amendment, the State relies on the dictum in State v. Boykins, supra. That dictum appears to approve of registration searches without probable cause. We view the Boykins dictum as somewhat problematic support for an identification search. Since Boykins, no Supreme Court has allowed a search based solely on a driver's inability to present driving credentials. In every case we examined, the facts supported probable cause to search or arrest.[1] Notably, the search in Boykins itself was based on probable cause. See Boykins, supra, 50 N.J. at 77-78, 232 A.2d 141. In any event, because this case does not involve a registration search, we need not determine the full import of the Boykins dictum here.
In this case, the passenger produced a valid registration for the vehicle. Hence, the officer could not reasonably conclude that the Acura was stolen. Although defendant lied about his identity, claiming he could not produce his license because he had been mugged and his wallet containing his license had been stolen, that fabrication may have suggested to the officer that defendant did not have a license, or even that his license had been suspended, but it did not establish probable cause to believe there was "criminal activity afoot." See Hill, supra, 115 N.J. at 174, 557 A.2d 322.
Nor did the missing driver's license constitute further proof of the offense committed. The offense of driving without a license is complete upon the driver's inability to present his license to the police upon request. See State v. Scheer, 99 Or.App. 80, 781 P.2d 859 (1989) (holding invalid a search of suspect for identification to uncover further evidence of the offense of failing to present a driver's license); cf. Knowles v. Iowa, 525 U.S. ___, ___, 119 S.Ct. 484, 488, 142 L. Ed.2d 492, 499 (1998) (observing that no further evidence of speeding could be found in the passenger compartment of the stopped vehicle and therefore search of vehicle incident to traffic citation was invalid). Consequently, since defendant's identity was *299 unnecessary to prove the motor vehicle offense committed here, the officer could not justify entering the vehicle to look for defendant's driver's license or other proof of identity.
Of course we recognize that Officer Gallaro needed to know defendant's true identity in order to issue him a summons, and he may even have had reason to believe he could find proof of defendant's identity inside the vehicle, but neither the Fourth Amendment nor our state constitution permits the warrantless entry of a vehicle to search for identification without probable cause. Moreover, as the State itself acknowledges, the officer was not left without legal alternatives for ascertaining his identity.
New Jersey law prescribes exactly what an officer should do when, during a traffic stop, a driver fails to present his license and then lies about his identity. The officer may either detain the driver for further questioning until he satisfies himself as to the driver's true identity, see State v. Dickey, 152 N.J. 468, 476-78, 706 A.2d 180 (1998), or arrest the driver for operating a vehicle without a license, see N.J.S.A. 39:3-29, 39:5-25; see also State v. Campbell, 53 N.J. 230, 237, 250 A.2d 1 (1969).[2] The officer may not, however, absent probable cause to believe that a further offense has been committed, enter the vehicle to look for identification.
The most that can be said is that the officer here had a "reasonable suspicion" that defendant's license had been suspended. But a "reasonable suspicion" is not "probable cause," and therefore the entry was constitutionally impermissible. See State v. Scanlon, 84 N.J.Super. 427, 436, 202 A.2d 448 (App. Div.1964) (holding that where the passenger produced his license and the registration for the vehicle, the driver's failure to produce his license was insufficient to support probable cause to search the vehicle); cf. State v. Holmgren, 282 N.J.Super. 212, 215, 659 A.2d 939 (App.Div.1995) ("Although the inability of a driver to produce driving credentials raises a reasonable suspicion that the vehicle was stolen, it does not constitute probable cause to believe that the vehicle was stolen.") Because there was no probable cause to search the vehicle here, the search was invalid under the federal and state constitutions.
Similarly, the State's reliance on State v. Wilcox, supra, is unavailing. There, a search warrant had been issued to search the person, vehicle, and business of Daniel Roberson based on information that he was involved in the sale of narcotics. 180 N.J.Super. at 454, 435 A.2d 569. Shortly before the police executed the warrant, the defendant, James Wilcox, arrived as a passenger in Roberson's vehicle. Roberson entered his business, a barbershop, while Wilcox entered a sandwich shop next door. Upon execution of the warrant, packets of heroin and cocaine were found on Roberson's person. Meanwhile, the police saw Wilcox standing by the door to the barbershop. Ibid. When an officer approached him and asked for identification, Wilcox appeared nervous and gave a false name. The officer saw what appeared to be the bulge of a wallet in Wilcox's pocket and asked him if he had any identification in his wallet. Id. at 454-55, 435 A.2d 569. Wilcox removed the wallet, and as he thumbed through it, the officer recognized the driver's license of a man who he knew was incarcerated. Id. at 455 & n.1, 435 A.2d 569. The officer then searched Wilcox and discovered eighteen packets of heroin. Id. at 455, 435 A.2d 569. Despite recognizing that "[n]o United States Supreme Court opinion [was] squarely in point," ibid., the Wilcox court held that the officer's "search of [Wilcox]'s person was not an unreasonable intrusion in view of the evident need to establish [the] defendant's identity in the investigation of a suspected crime or crimes," id. at 457, 435 A.2d 569.
To the extent Wilcox appears to recognize an exception to the probable cause requirement of the Fourth Amendment to search for identification, we decline to follow its holding. *300 In any event, Wilcox is clearly distinguishable on its facts. In that case, the defendant had just arrived with a person who possessed a quantity of heroin and cocaine; he was nervous, he was evasive, and more than lying about his identity, he actually possessed a wallet containing another person's driver's license. Although those factors might not amount to probable cause to search or arrest, they are certainly more suspicious than the facts here, where defendant only lied about his identity.
In State v. Pierce, supra, our Supreme Court criticized "judicially-created exceptions" to the probable cause requirement, stating:
Because probable cause "is the constitutionally-imposed standard for determining whether a search and seizure is lawful" and "occupies a position of indisputable significance in search and seizure law," vehicle searches sustainable under the "automobile exception" and based on probable cause stand on firmer ground than those that depend for their validity on a judicially-created exception to the warrant requirement, such as the Belton[3] rule, which requires no proof of probable cause.
[136 N.J. at 214, 642 A.2d 947 (citations omitted).]
The Pierce Court held the search of the passenger compartment of a vehicle incident to the arrest of the driver for a motor vehicle offense violated the state constitution because the passenger compartment was not within the driver's immediate control upon arrest. See 136 N.J. at 208-10, 642 A.2d 947.
Recently, in Knowles v. Iowa, 525 U.S. ___, 119 S.Ct. 484, 142 L. Ed.2d 492 (1998), the Supreme Court of the United States refused to condone a motor vehicle search incident to a traffic citation even though such a search might have been permissible had the investigating officer decided to arrest the driver for the offense. The Court held that an Iowa statute permitting a "search incident to citation" violates the Fourth Amendment. 525 U.S. at___, 119 S.Ct. at 488, 142 L. Ed. 2d at 499. Speaking for a unanimous Court, Chief Justice Rehnquist rejected Iowa's argument that an exception to the probable cause requirement is appropriate in such circumstances. See 525 U.S. at___ _ ___, 119 S.Ct. at 487-88, 142 L. Ed.2d at 498-99. Noting the "two historical rationales" for searches incident to arrest, "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial," 525 U.S. at___, 119 S.Ct. at 487, 142 L. Ed.2d at 498, the Chief Justice refused to accept Iowa's contention that a "search incident to citation" was constitutional because the suspect may attempt to destroy evidence related to his identity, such as a driver's license or a vehicle registration, or evidence of another as yet undetected crime. The Chief Justice observed:
As for the destruction of evidence relating to identity, if a police officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting him rather than merely issuing a citation. As for destroying evidence of other crimes, the possibility that an officer would stumble onto evidence wholly unrelated to the speeding offense seems remote.
[525 U.S. at___, 119 S.Ct. at 488, 142 L. Ed.2d at 499.]
A new judicially created exception to the probable cause requirement of the Fourth Amendment for "identification searches" cannot be reconciled with Knowles or Pierce. Where a driver has failed to produce his license and an investigating officer is merely trying to determine the driver's identity so he can issue a citation, no search of the passenger compartment can be justified. This is especially so where, as here, the unlicensed driver no longer has access to the vehicle's interior. See Pierce, supra, 136 N.J. at 214-15, 642 A.2d 947; see also People v. Fulton, 289 Ill.App. 3d 970, 225 Ill.Dec. 210, 683 N.E.2d 154 (1997)(holding that police officer was not authorized to enter defendant's car without permission and drive it away following arrest for driving without valid license, and therefore, seizure of cocaine found in car violated state and federal constitutions).
*301 Significantly, the Supreme Court of New Hampshire recently rejected the invitation to adopt an "identification search exception" under its state constitution in a similar circumstance. In State v. Webber, 141 N.H. 817, 694 A.2d 970 (1997), the court considered a New Hampshire State Trooper's search of a driver's wallet for identification following a valid stop for a traffic offense. The court stated:
[Although] denying an officer the ability to at least ascertain the identity of an individual "could have a perplexing effect on law enforcement efforts[,]" [u]nder part I, article 19 of our constitution, ... the protection from unreasonable searches is not diminished by the desire, no matter how laudable, to aid law enforcement. In addition, the warrantless search in this case cannot be sanctioned as a necessary means to aid law enforcement; Trooper Holdsworth had lawful alternatives that he could have followed to ascertain the defendant's identity....
* * * *
The State has failed to persuade us that the need for Trooper Holdsworth to discover the defendant's identity justifies nibbling away at the defendant's constitutional right to be free from unreasonable searches. Because the search of the defendant's wallet was "manifestly exploratory in nature," it violated both the letter and the spirit of part I, article 19 of the New Hampshire Constitution.

[Id. at 972-73 (citations omitted).]
This rationale is sound and should be adopted in this state. Practical convenience in aid of law enforcement administration is laudable, but it is not an objectively reasonable basis to justify "nibbling away" at our constitutional rights. Indeed, other jurisdictions agree that a search of a motor vehicle for proof of identity when a driver cannot produce his license is an impermissible constitutional intrusion absent probable cause to believe a crime has been committed or evidence of a crime may be destroyed. See State v. Green, 103 N.C.App. 38, 404 S.E. 2d 363 (1991) (holding search of glove compartment for identification violated Fourth Amendment); see also State v. Smith, 82 Or.App. 636, 729 P.2d 10 (1986) (holding that warrantless search of defendant's automobile for identification was not permissible incident to arrest under the Oregon state constitution).
Accordingly, the order denying defendant's motion to suppress is reversed and the matter is remanded to the trial court for further proceedings.
NOTES
[1] In those cases, the police had probable cause to believe that either the vehicle was stolen or other criminal activity was afoot. See, e.g., State v. Young, 87 N.J. at 132, 143-44, 432 A.2d 874 (1981) (the driver's failure to produce a registration, and the presence of a counterfeit driver's license and a marijuana cigarette in plain view justified search of the vehicle); State v. Patino, 83 N.J. 1, 12, 414 A.2d 1327 (1980) (the officer's plain view observation of what appeared to be marijuana, plus the inability of the driver to present his driver's license, justified arrest of the occupants and a limited search of the interior compartment of the vehicle); State v. Gray, 59 N.J. 563, 567-68, 285 A.2d 1 (1971) (the driver's failure to produce a registration, furtive movements, and other criminally suspicious activity justified entry of the vehicle and search of driver's gloves); State v. Hock, 54 N.J. 526, 533, 257 A.2d 699 (1969) (a missing registration plus the fact that the license plates on the car came from a different vehicle supported "a well-grounded suspicion that the car was stolen[and] warranted arrest of its occupants"), certif. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L. Ed.2d 797 (1970); State v. Campbell, 53 N.J. 230, 237, 250 A.2d 1 (1969) (the driver's inability to produce a license or registration or suitable identification, together with his statement to "the officer that he didn't know whose car it was and that he had borrowed it from some fellow in a garage," established a sufficient basis for believing the car was stolen and justified the driver's arrest); see also State v. Branham, 191 Ariz. 94, 952 P.2d 332, 334-35 (Ct.App.1997) (recognizing a driver's inability to produce a registration in itself may well be an entirely innocent event); State v. Haybum, 171 N.J.Super. 390, 393-94, 409 A.2d 802 (App.Div. 1979) (observing "[t]he cases [cited by Boykins and Hock ] invariably have other elements to justify the search"), certif. denied, 84 N.J. 397, 420 A.2d 321 (1980).
[2] However, Officer Gallaro could not have arrested defendant for responding to his request for identification with a false name because such conduct is not a criminal offense in New Jersey. See State v. Valentin, 105 N.J. 14, 23, 519 A.2d 322 (1987). Compare, for example, State v. Fesler, 68 Or.App. 609, 685 P.2d 1014, review denied, 297 Or. 547, 685 P.2d 997 (1984).
[3] New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L. Ed.2d 768 (1981).