253 N.J. Super. 273 (1992)
601 A.2d 753
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SCOTT NICHOLS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1991.
Decided January 23, 1992.
*274 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Steven J. Kaflowitz, Assistant Prosecutor, argued the cause for appellant (Andrew K. Ruotolo, Jr., Union County Prosecutor, attorney; Steven J. Kaflowitz, of counsel and on the brief).
Richard S. Lehrich, argued the cause for respondent.
Robert J. Del Tufo, Attorney General, submitted a brief on behalf of amicus curiae Attorney General of New Jersey (Catherine A. Foddai, Deputy Attorney General, of counsel and on the brief).
Wilfredo Caraballo, Public Defender, submitted a brief on behalf of amicus curiae Public Defender of New Jersey (Ruth Bove, Assistant Deputy Public Defender, of counsel and on the brief).
Alan L. Zegas submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant is under indictment for aggravated sexual assault, in violation of N.J.S.A. 2C:14-2(a). The alleged victim of the assault is a thirty year old woman who defendant fathered out of wedlock. The alleged victim was raised by her mother and did not learn the identity of her father until a couple of years before the assault. Anxious to establish a relationship with her father, the alleged victim made arrangements for defendant to travel from his home in western Pennsylvania to spend the weekend of February 18 and 19, 1989 with her at a Sheraton Hotel in Elizabeth. The defendant and alleged victim had lunch and dinner together and stayed in the same hotel room for two nights. According to the victim, at the end of the second day she retired for the evening around 10:30 p.m., but defendant stayed up to watch pornographic movies. Sometime later that night, defendant allegedly committed a sexual assault upon his daughter.
*275 A complaint charging defendant with aggravated sexual assault was signed on February 28, 1989. Thereafter, the hotel complied with the prosecutor's request to provide a copy of defendant's hotel registration records, including the dates of his arrival and departure, the rooms he occupied, his telephone calls, and the charges to his room, including the record of his movie rentals.
On January 17, 1990, defendant moved to suppress all evidence obtained from the records of the hotel on the ground that they were the subject of an illegal, warrantless search and seizure. The trial court granted defendant's motion, ruling that the hotel's records are "similar enough" to phone billing records, which the Court in State v. Mollica, 114 N.J. 329, 554 A.2d 1315 (1989) held to be protected against unreasonable searches and seizure by Article I, paragraph 7 of the New Jersey Constitution, "to be accorded the same protection."
On the day following the court's opinion granting defendant's motion to suppress, the prosecutor applied for a warrant to obtain the hotel records. In support of this application, the prosecutor relied exclusively upon statements of the victim and her mother given prior to the filing of charges against defendant and the testimony of an investigating officer that she had confirmed with the Sheraton that the records of defendant's stay at the hotel still existed. The officer testified that the records were needed to corroborate the victim's account of what occurred during the weekend of the alleged assault. The trial court granted the prosecutor's application for a warrant, but noted that it was not passing on any claim defendant might present regarding the fruit of the poisonous tree doctrine. In compliance with the warrant, the hotel provided the prosecutor with the same records it had previously released voluntarily.
Defendant then filed another motion to suppress, which the trial court granted by an oral opinion delivered on May 3, 1991. The court stated that the prosecutor's application for a warrant was "primarily motivated by the information" obtained by the *276 warrantless search and concluded that the fruits of the search pursuant to the warrant were tainted by the illegality of the prior search.
The State filed motions for leave to appeal from both suppression orders, which we granted. We conclude that the release pursuant to a search warrant of defendant's hotel registration records was consistent with Article I, paragraph 7 of the New Jersey Constitution. Therefore, we reverse the trial court's order granting defendant's motion to suppress the evidence obtained pursuant to the warrant. This disposition makes it unnecessary for us to pass upon the validity of the warrantless search.
Preliminarily, we note that the only basis for defendant's challenge to the prosecutor's search of his hotel registration records is the New Jersey Constitution. In Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Supreme Court of the United States held that the identity of telephone numbers called by an individual is not subject to protection under the Fourth Amendment to the United States Constitution. Similarly, in United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Court held that an individual has no privacy interest protected by the Fourth Amendment in financial records maintained by a bank. Since an individual's interest in protecting the privacy of his hotel registration records is similar, indeed perhaps less compelling, than his interest in protecting the privacy of his telephone calls and bank financial records, Smith and Miller indicate that police access to hotel registration records is not subject to any limitations under the Fourth Amendment. However, in State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982) the Supreme Court of New Jersey held that an individual has an interest in the privacy of his telephone billing records which is protected by Article I, paragraph 7 of the New Jersey Constitution. In State v. Mollica, supra, 114 N.J. 329, 554 A.2d 1315, the Court extended its holding in Hunt to telephone billing records resulting from an individual's use of a hotel room telephone. We *277 assume for the purpose of this opinion, without deciding the issue, that the state constitutional protection which the Supreme Court of New Jersey has recognized in telephone records also would extend to certain hotel registration information, including in particular records of movie rentals. Cf. State v. Hempele, 120 N.J. 182, 201, 576 A.2d 793 (1990) ("many would be upset to see a neighbor or stranger ... checking receipts to see what videotapes they rent."). Therefore, we pass directly to the question whether any illegality in the original disclosure of those records without a warrant taints the subsequent disclosure in compliance with a warrant.
The independent source doctrine allows the admission of evidence that has been obtained by means wholly independent of any constitutional violation.[1]State v. Curry, 109 N.J. 1, 13-17, 532 A.2d 721 (1987); State v. Sugar, 100 N.J. 214, 237, 495 A.2d 90 (1985). As explained in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920), the exclusionary rule "does not mean that facts obtained [by an illegal search] become sacred and inaccessible. If knowledge of them is gained by an independent source, they may be proved like any others." The rationale of this doctrine is that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred." State v. Curry, supra, 109 N.J. at 15, 532 A.2d 721, quoting *278 Nix v. Williams, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387 (1984).
In Murray v. United States, supra, the Court held that the independent source doctrine applies to evidence initially discovered during, or as a consequence of, an unlawful search, but later independently obtained from activities untainted by the initial illegality. In the course of its opinion the Court stated:
The independent source doctrine [rests] upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one... there is no reason why the independent source doctrine should not apply.
The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant. [487 U.S. at 542, 108 S.Ct. 2529, 101 L.Ed.2d at 483-84].
See also State v. Fenin, 154 N.J. Super. 282, 381 A.2d 364 (App.Div. 1977).
We conclude that even if the initial warrantless disclosure of defendant's hotel registration records violated the New Jersey Constitution, the records subsequently disclosed in response to a warrant are admissible at trial under the independent source doctrine. Based on the victim's statement, the prosecutor had probable cause to believe that the hotel records would contain evidence relevant to the charges against defendant even prior to the hotel's initial voluntary disclosure of those records. In fact, the discovery of the hotel records would be a routine and inevitable part of any investigation into the alleged victim's charges. The alleged assault occurred in the privacy of a hotel room with only the victim and defendant present. Therefore, the prosecutor had to anticipate that the trial would turn essentially on the credibility of the alleged victim and the defendant, and that any evidence either corroborating or contradicting the victim's account of what occurred, including her assertion that defendant ordered pornographic *279 movies in the hotel room as she was going to sleep, would be extremely significant. The most obvious source of such evidence was the hotel records.
Furthermore, the prosecutor's application for a warrant relied exclusively upon information he possessed prior to the hotel's voluntary production of its records. The critical document supporting issuance of the warrant was the victim's own statement, taken prior to the initial disclosure of the hotel records, which clearly established not only probable cause for production of the records but also their indispensability to a complete investigation of the charges. Consequently, the prosecutor has established by clear and convincing evidence that "the search pursuant to a warrant was in fact a genuinely independent source of the information ... at issue here." Murray v. United States, supra, 487 U.S. at 542, 108 S.Ct. at 2535, 101 L.Ed.2d at 483; cf. State v. Sugar, supra, 100 N.J. at 237, 495 A.2d 90 ("If the evidence would have been obtained lawfully and properly without the misconduct, exclusion of the evidence would put the prosecution in a worse position than if no illegality had transpired.").
The final consideration supporting the admissibility of defendant's hotel records is that the prosecutor's initial failure to obtain a warrant was not in any sense flagrant misconduct. Our Supreme Court has recognized that one test of whether prosecuting authorities have obtained evidence by means that are sufficiently independent to dissipate the taint of prior illegal conduct is "the flagrancy and purpose of the police misconduct." State v. Johnson, 118 N.J. 639, 653, 658-59, 573 A.2d 909 (1990); see also State v. Casimono, 250 N.J. Super. 173, 187, 593 A.2d 827 (App.Div. 1991). When the prosecutor's investigator requested the records of defendant's hotel registration, she may have been uncertain whether hotel telephone records are entitled to constitutional protection, because Mollica was not decided until March 16, 1989, which was less than a month *280 prior to the hotel's voluntary disclosure of its records.[2] And whether the other records which the hotel voluntarily released to the prosecutor, such as the records of defendant's movie rentals, are entitled to similar constitutional protection, remains an open question to this day. Consequently, at worst the "police misconduct" in this case consisted of a lack of complete understanding of a subject on the frontier of state constitutional law. Thus, as in Murray, this case does not represent "an example of a `search first, warrant later' mentality." 487 U.S. at 540 n. 2, 108 S.Ct. at 25 n. 2, 101 L.Ed.2d at 482. Consequently, we hold that the hotel records obtained pursuant to the warrant in this case are admissible without expressing any view whether the same result would be appropriate in a case where a prosecutor flagrantly disregarded constitutional rights.
Accordingly, we reverse the order granting defendant's motion to suppress the evidence obtained pursuant to the warrant.
NOTES
[1] Although the State has changed its theory in support of the admissibility of the evidence obtained pursuant to the warrant from the "inevitable discovery" doctrine to the closely related "independent source" doctrine, we are satisfied that the State's present argument is substantially similar to the argument it made before the trial court. Indeed, the Supreme Court of the United States has characterized the "inevitable discovery" doctrine as "an extrapolation from the independent source doctrine." Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472, 481 (1988). Consequently, we reject defendant's contention that we should not entertain this argument.
[2] We note that the telephone records were not the primary object of the request for the hotel records and that the State does not intend to offer them into evidence.