754 A.2d 576

STATE OF NEW JERSEY, PLAINTIFF—RESPONDENT, v.
STEPHEN R. HINTON, DEFENDANT—APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 7, 2000—Decided July 13, 2000.

Before Judges BROCHIN and WECKER.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Abby P. Schwartz*, Assistant Deputy Public Defender, of counsel and on the brief).

*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney for respondent (*Steven A. Yomtov*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Defendant, Stephen R. Hinton, pled guilty to the third count of Indictment 99–02–0260, third degree distribution of CDS (cocaine), *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(3); and to the first count of Indictment 98–12–2978, terroristic threats, *N.J.S.A.* 2C:12–3b. In accordance with a plea agreement encompassing both Indictments, defendant received concurrent four year state prison sentences for these offenses. Fines and penalties appropriate to each offense were also imposed.

The plea agreement reserved to defendant the right to appeal the denial of his motion to suppress evidence with respect to the drug charge, and defendant now appeals from that denial. Defendant's contentions on appeal are as follows:

POINT I   AS THE TROOPER HAD NEITHER AUTHORITY TO ENTER THE CAR TO CHECK FOR MR. HINTON'S CREDENTIALS, NOR ANY LEGAL BASIS FOR PLACING THE DEFENDANTS UNDER ARREST, THE TRIAL COURT ERRED IN DENYING MR. HINTON'S MOTION TO SUPPRESS EVIDENCE.

   A.   Introduction

   B.   There Was No Exception to the Warrant Requirement Justifying the Warrantless Search of the Car.

   C.   The Actions of Hinton and Streater Did Not Amount To A Violation of *N.J.S.A.* 2C:28–4a, But Rather Fall Within The Rubric Of *State v. Valentin.*

   D.   The Seizure Of The Drugs Must Be Suppressed As "Fruit Of The Poisonous Tree."

POINT II   THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

We have carefully reviewed the record and the briefs in light of applicable law. The critical question on this appeal is whether a State Trooper's impermissible search for defendant's identification inside a motor vehicle, *see State v. Lark,* 319 *N.J.Super.* 618, 726 *A.*2d 294 (App.Div.1999), *aff'd o.b.,* 163 *N.J.* 294, 748 *A.*2d 1103 (2000), taints evidence subsequently turned over to the trooper by

defendant's passenger. As we shall explain, we are satisfied that it does not and that the Law Division Judge did not err in denying defendant's motion to suppress the evidence central to his drug conviction.

Evidence adduced at the motion hearing consisted solely of the testimony of State Trooper Alan Johnson. On the afternoon of December 31, 1998, defendant was the driver of a car in which co-defendant Carla Streater was a front seat passenger when defendant was stopped on the Garden State Parkway by State Trooper Johnson for speeding. Johnson had clocked Hinton's car at 90 miles per hour. As the trooper pulled defendant over, he observed the driver mouthing some words to the passenger and the passenger nodding as if acknowledging that she understood. When asked for his credentials, defendant produced a registration and insurance card, but told the state trooper he did not have his license and never carried it. When Johnson asked him for his name, age and address, defendant gave the trooper the name "Craig R. Paynter," gave a street address in Atlantic City; and said that he was 29 years old and that his birth date was November 12, 1970. The trooper told defendant that that would make him 28, not 29. When confronted with the contradiction between his birth date and the age he had given, defendant responded that " 'he had been telling everybody he's twenty-nine.' "

According to Johnson, he then asked defendant whether he had any form of identification, and defendant responded in anger, " 'You have my F"n registration. What else do you need?' " Johnson explained that he needed defendant's identification because the registration and insurance card only told him that the vehicle was leased and that the insured was an Atlantic City company. Defendant asked to look at the credentials he had given to the trooper. When the trooper refused, defendant became more agitated and repeated, " 'You have my MF"n registration and insurance card.' " Defendant's apparent anger gave the trooper concern, and he called for back-up.

Back-up arrived, and a computer check of Division of Motor Vehicle records revealed no "Craig R. Paynter" in the system. After defendant was confronted with that information, he said his name was "Craig A. Paynter." When questioned, Streater also said defendant's name was "Craig Paynter." Defendant referred the trooper to his supposed employer, the Flagship Condominium Owners' Association in Atlantic City. When contacted by the back-up trooper, the employer verified that a "Craig Paynter" worked for the firm and described Paynter as a white man with blue eyes. The individual stopped by Trooper Johnson was a black male.

While the back-up officer was checking defendant's claimed employment, Trooper Johnson went into the car, opened the center console in search of defendant's license or other identification, and found a wallet with various forms of identification, including credit cards, all in the name of Craig A. Paynter. A photo identification in the wallet showed a white male with blue eyes and brown hair. Johnson placed defendant under arrest for falsely incriminating another. *N.J.S.A.* 2C:28–4a.[1] Defendant then gave his own name, explaining that he had lied because his license was suspended. Trooper Johnson informed defendant he was going to arrest Streater for the same offense, whereupon defendant attempted to exonerate her, saying he had "coerced" her into giving his name as "Craig Paynter." When the trooper told Streater he was arresting her for the same offense, she began to cry and voluntarily handed the trooper a clear plastic bag containing numerous ziplock bags of a substance that turned out to be cocaine. She told the trooper that defendant had given the bag to her. It is this evidence that defendant sought to suppress.

Because the motion judge made no finding respecting the sequence of events, that is, whether Trooper Johnson entered the

---

[1] *N.J.S.A.* 2C:28–4a provides: "A person who knowingly gives or causes to be given false information to any law enforcement officer with purpose to implicate another commits a crime of the fourth degree."

vehicle and found the wallet during or after the back-up trooper's call to the Flagship, and because the trooper's testimony is ambiguous regarding the chronology, we will assume the facts most favorable to defendant: that Johnson went into the car and found the wallet while the back-up trooper called the Flagship and before learning what that call revealed.

The defendant driver in *Lark* was stopped for a motor vehicle offense. His passenger produced a valid registration and insurance card for the vehicle, along with his own driver's license. Lark produced no license. The police officer then searched the car for that driver's license or other identification. The Supreme Court affirmed our holding that that search, which revealed contraband, was unlawful, and the evidence seized as a result of that unlawful search must be suppressed. We are mindful of *Lark's* holding that when a law enforcement officer stops a vehicle for a motor vehicle offense and is shown a registration and insurance card for the vehicle but no license for the driver, the officer may not enter the vehicle to search for the driver's license or other identification without probable cause to believe that a crime has been committed and that evidence of crime or contraband is contained in the vehicle. *Lark, supra,* 319 *N.J.Super.* at 621, 726 *A.*2d 294; *see also State v. Cooke,* 163 *N.J.* 657, 671, 751 *A.*2d 92 (2000) (warrantless search of automobile requires both probable cause and exigent circumstances).

Defendant contends that the drugs Streater handed over to Trooper Johnson should have been suppressed as the fruit of the poisonous tree because Streater's arrest for false incrimination was the result of the information Johnson gained by unlawfully searching the car. *See Wong Sun v. United States,* 371 *U.S.* 471, 83 *S.Ct.* 407, 9 *L.Ed.*2d 441 (1963). We disagree.

Because Trooper Johnson had no right to enter the vehicle to search for defendant's identification, the credentials he found, and any evidence he discovered solely as a result of finding those credentials, were inadmissible. However, the back-up unit learned, independent of Trooper Johnson's search, that the driver

could not be Craig A. Paynter and that there was a Craig A. Paynter who was employed by the entity defendant claimed as his employer. Defendant was obviously guilty of driving without a license, and he had admitted to a speeding violation although he expressed the belief that he was traveling at 75 and not 90 miles per hour. Thus the trooper had probable cause to believe that defendant not only had given him false information, but that he had done so with the intent to falsely implicate another, *N.J.S.A.* 2C:28–4a, thereby avoiding his own liability for speeding as well as for the license violation.[2] When Streater gave defendant's name as "Craig Paynter," there was probable cause to believe she was complicit in the same *N.J.S.A.* 2C:28–4a offense and therefore subject to arrest. She voluntarily produced the drugs after Trooper Johnson informed her that she was about to be arrested.

Two recognized exceptions to the fruit-of-the-poisonous tree doctrine apply here: information "gained from an independent source," *see Silverthorne Lumber Co. v. United States,* 251 *U.S.* 385, 392, 40 *S.Ct.* 182, 183, 64 *L.Ed.* 319, 321 (1920), and evidence that would inevitably have been discovered irrespective of the unlawful search. *See Nix v. Williams,* 467 *U.S.* 431, 448, 104 *S.Ct.* 2501, 2511, 81 *L.Ed.*2d 377, 390 (1984).[3] *See generally* Byrnes, *N.J. Arrest, Search & Seizure* Ch. 33 (1999–2000).

Our Supreme Court has held that wrongfully obtained information does not necessarily bar admission of all evidence subsequently obtained if that evidence was discovered by means independent of the unlawful police conduct. *See, e.g., State v. Arthur,* 149 *N.J.* 1, 15, 691 *A.*2d 808 (1997) ("[W]e are satisfied that the investigatory stop of defendant's vehicle can be based on grounds giving rise to an articulable and reasonable suspicion of his criminal activity

---

[2] Defendant also knew, and the trooper soon learned, that Hinton was driving while on the suspended list.

[3] A third exception has its source in *Wong Sun.* That exception applies when the discovery of the challenged evidence is sufficiently attenuated from the illegal police conduct. 371 *U.S.* at 487–88, 83 *S.Ct.* 407.

independent of the incriminating evidence seized from [suspected buyer]." *id.* at 13, 691 *A*.2d 808); *State v. Hunt,* 91 *N.J.* 338, 349, 450 *A*.2d 952 (1982) (wrongfully acquired toll billing records do not require suppression of evidence seized subsequently on properly obtained warrant); *see also State v. Sharpless,* 314 *N.J.Super.* 440, 453, 715 *A*.2d 333 (App.Div.), *certif. denied,* 157 *N.J.* 542, 724 *A*.2d 802 (1998) (although the invalid arrest would bar admission of evidence seized incident thereto, it does not require suppression of that same evidence as the product of a lawful search of the area where defendant was reasonably suspected of having discarded the evidence); *State v. Nichols,* 253 *N.J.Super.* 273, 277, 601 *A*.2d 753 (App.Div.1992)(hotel records unlawfully seized were nevertheless admissible when a warrant later issued upon independent information). The rationale is that although law enforcement cannot be permitted to take advantage of its own illegal conduct, the public's interest in trials based upon all the evidence requires that law enforcement not be in a worse position than it would have been absent the misconduct. *Id.*

The closely related inevitable-discovery doctrine also supports the admissibility of the drugs produced by Streater because the back-up officer's contemporaneous investigation by computer check and mobile phone inevitably would have given Trooper Johnson the same information and led him to the same conclusions as did his unlawful entry into defendant's vehicle. *See State v. Sugar,* 108 *N.J.* 151, 156, 527 *A*.2d 1377 (1987) (*Sugar III* ). Those conclusions were that defendant was not Craig A. Paynter; that there was a Craig A. Paynter who held a valid driver's license; that defendant was attempting to impersonate Craig A. Paynter; and that his motive for doing so was to falsely implicate Paynter and thereby avoid prosecution himself for driving without a license and speeding. Streater's conduct in falsely naming Craig Paynter as the driver gave Johnson probable cause to arrest her for the same offense. Her voluntary production of the CDS in response to her lawful arrest or threat of arrest flowed from the information produced by the back-up unit's lawful investigation, independent of Johnson's unlawful credential search. We there-

fore conclude that the challenged evidence need not be suppressed as the fruit of the poisonous tree. *See State v. Johnson,* 118 *N.J.* 639, 653, 573 *A.*2d 909 (1990) (quoting *Brown v. Illinois,* 422 *U.S.* 590, 603, 95 *S.Ct.* 2254, 2261 45 *L.Ed.*2d 416, 427 (1975)).

*Lark* is distinguishable because the challenged evidence in that case was unquestionably discovered solely as the result of the police officer's unlawful entry into the defendant's vehicle. The contraband which was inside the car was not even arguably discovered by means of any independent source, nor would it inevitably have been discovered by any lawful means. Here the back-up investigation produced virtually the same information that Trooper Johnson learned by his unlawful search, and Streater's arrest was based upon the lawfully obtained information. *Lark* therefore does not require suppression of the drugs produced by Streater.

We see no merit in defendant's contention with respect to his sentence, *see R.* 2:11–3(e)(2), and we affirm.