723 A.2d 132 (1999)
318 N.J. Super. 217
STATE of New Jersey, Plaintiff-Appellant,
v.
Walter CHANEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1998.
Decided February 16, 1999.
*133 John Kaye, Monmouth County Prosecutor, for plaintiff-appellant (Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
Granata, Wernik & Zaccardi, Matawan, for defendant-respondent (Robin T. Wernik, of counsel; Anne Zaccardi, on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted on six counts of burglary, in violation of N.J.S.A. 2C:18-2, and six counts of theft of movable property, in violation of N.J.S.A. 2C:20-3a. The trial court granted defendant's motion to suppress on the ground that the affidavit in support of the application for the warrant authorizing the search which resulted in discovery of the evidence against him contained unlawfully obtained information. We granted the State's motion for leave to appeal from the suppression order. We conclude that even if the warrant affidavit contained unlawfully obtained information, the search warrant was valid because the lawfully obtained information in the affidavit was sufficient to establish probable cause. Accordingly, we reverse the order granting defendant's motion to suppress and remand the case for trial.
The evidence presented at the hearing on the motion to suppress can be briefly summarized. In early March of 1997, a series of home burglaries were committed in Howell and Lakewood Townships. Two of the burglaries were committed in homes located near the Regency Motel, which is on the boundary between Howell and Lakewood. On March 17, 1997, the police were informed that a person identified as Brandon Johnson was attempting to sell jewelry in a Lakewood jewelry store. The police went to the jewelry store, arrested Johnson, and found jewelry taken in one of the burglaries in his possession. Johnson told the police that he was homeless but that he was staying in Room 307 at the Regency Motel with another person who he identified as Walter Chaney. The police then went to the Regency Motel, where the manager told them that Chaney had just gone into Room 307. The manager also told the officers that Johnson and Chaney had been staying in the motel for a month or two. At this point, the officers conducted a record check for Walter Chaney, which revealed two outstanding arrest warrants for a person with that name and also indicated that his last known residence was the Regency Motel. The police went to Room 307 and knocked on the door, but received no response. Consequently, they entered the room. However, Chaney had *134 fled by breaking out the bathroom window and jumping onto the parking lot below. While they were inside the motel room, the police noticed several items of property which matched items reported stolen in the burglaries. The next day, the police returned to the jewelry store where Johnson had been arrested. The store produced pawn slips signed by Walter Chaney for two pieces of jewelry which matched jewelry stolen in the burglaries.
Based on this information, one of the officers applied to a Superior Court Judge for a warrant to search Room 307 at the Regency Motel for property stolen in the burglaries. The judge issued the warrant, and the police officers executed it later that day, which resulted in the discovery of property stolen in five of the burglaries. Subsequently, the police discovered that the Walter Chaney who was the subject of the outstanding arrest warrants which they sought to execute upon their initial entry into Room 307 was not the defendant.
The trial court ruled that the police officers' initial entry into the motel room to execute a warrant for the arrest of another person with the same name as defendant was unlawful. The court also ruled that because the affidavit in support of the application for the search warrant contained information obtained during this unlawful entry, the warrant was invalid even if it contained other information sufficient to establish probable cause. The court concluded that cases such as United States v. Karo, 468 U.S. 705, 719-21, 104 S.Ct. 3296, 3305-06, 82 L. Ed.2d 530, 544-45 (1984), which hold that a search warrant issued on the basis of an affidavit containing both lawfully and unlawfully obtained information will be sustained if the lawfully obtained information is sufficient to establish probable cause, have been overruled by Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L. Ed.2d 472 (1988).
Preliminarily, we note that the State does not challenge the trial court's determination that the police officers' initial entry into defendant's motel room pursuant to a warrant for the arrest of another person with the same name as defendant was unlawful. Consequently, we assume for the purpose of this opinion that this entry was unlawful and proceed to consider whether the warrant authorizing the search of the motel room was invalid because the warrant affidavit included a description of the apparent contraband which the police had seen during their prior unlawful entry.
The Supreme Court of the United States and Supreme Court of New Jersey have both held that if an affidavit submitted in support of an application for a search warrant contains lawfully obtained information which establishes the probable cause required for a search, evidence obtained pursuant to the warrant will not be suppressed on the ground that the affidavit also contains false or unlawfully obtained information. United States v. Karo, supra, 468 U.S. at 719-21, 104 S.Ct. at 3305-06, 82 L. Ed.2d at 544-45; Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667 (1978); State v. Hunt, 91 N.J. 338, 349-50, 450 A.2d 952 (1982); accord United States v. Restrepo, 966 F.2d 964 (5th Cir.1992), cert. denied, 506 U.S. 1049, 113 S.Ct. 968, 122 L. Ed.2d 124 (1993); United States v. Herrold, 962 F.2d 1131 (3rd Cir.), cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L. Ed.2d 344 (1992); James v. United States, 418 F.2d 1150, 1151 (D.C.Cir.1969); State v. Pemberthy, 224 N.J.Super. 280, 296, 540 A.2d 227 (App.Div.), certif. denied, 111 N.J. 633, 546 A.2d 547 (1988); State v. Ortense, 174 N.J.Super. 453, 454-55, 416 A.2d 971 (App.Div.1980); see also State v. Arthur, 149 N.J. 1, 15, 691 A.2d 808 (1997); see generally, Wayne R. LaFave, 5 Search & Seizure: A Treatise on the Fourth Amendment § 11.4(f), at 287-92 (3d ed.1996). The primary doctrinal foundation of these decisions is the "independent source" doctrine, under which "evidence that was in fact discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible." Herrold, supra, 962 F.2d at 1140. This "doctrine is based `upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied' had the misconduct not occurred." Restrepo, supra, 966 F.2d at 969 (quoting Murray, supra, 487 U.S. at 542, 108 S.Ct. at *135 2535, 101 L. Ed.2d at 483); see also State v. Curry, 109 N.J. 1,14-17, 532 A.2d 721 (1987).
In Franks, the Court held that of the factual statements in a warrant affidavit are subject to challenge, but the defendant has the burden of showing not only that the affidavit contains false statements but also that those statements were made deliberately or in reckless disregard for the truth. 438 U.S. at 164-72, 98 S.Ct. at 2680-85, 57 L. Ed.2d at 677-82. Pertinent to the issue presented in this appeal, the Court also held that even if deliberately or recklessly false information is included in a warrant affidavit, evidence obtained pursuant to the warrant will not be suppressed if the affidavit contains sufficient other information to support a finding of probable cause. Id. at 171-72, 98 S.Ct. at 2684-85, 57 L. Ed.2d at 682.[1] In Karo, the Court, citing Franks, sustained the validity of a search warrant issued on the basis of an affidavit which recited information obtained by means of an unlawful search because "the warrant affidavit ... contained sufficient untainted information to furnish probable cause for the issuance of the search warrant." 468 U.S. at 721, 104 S.Ct. at 3306, 82 L. Ed.2d at 545.
Nevertheless, the trial court concluded that Murray, which was decided subsequent to Franks and Karo, forecloses a court from disregarding the part of a warrant affidavit which contains unlawfully obtained information and determining whether the remainder of the affidavit sets forth sufficient lawfully obtained information to support a finding of probable cause. The trial court rested its decision upon the following two sentence passage from Murray:
The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

[487 U.S. at 542, 108 S.Ct. at 2536, 101 L. Ed.2d at 483-84 (emphasis added).]
If viewed in isolation from the rest of the Court's opinion and prior case law, the quoted passage from Murray could be read to support the trial court's decision. However, this part of Murray is dictum because the warrant affidavit involved in that case did not set forth the police officers' observations during an earlier warrantless entry into the searched premises. Thus, it was clear in Murray that an earlier unlawful search did not affect the judge's decision to issue the warrant, and the Court had no occasion to consider whether the warrant would have been invalid if the supporting affidavit had included unlawfully obtained information. Moreover, the Court in Murray did not even mention Karo, Franks or the line of lower court decisions which have held that a search warrant issued on the basis of an affidavit containing unlawfully obtained information may be valid if the affidavit also contains other lawfully obtained information which establishes the probable cause required for the search. Consequently, it seems unlikely that the Court in Murray intended to change this well established law.
In addition, just two sentences before the passage in Murray relied upon by the trial court, the Court stated that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it otherwise would have occupied." Id. at 542, 108 S.Ct.at 2535, 101 L. Ed.2d at 483. If the inclusion in a warrant affidavit of unlawfully obtained information automatically required suppression of the evidence obtained in a search under the warrant even though other untainted information in the affidavit established probable cause, the government clearly would be placed in a "worse position" than if it had not engaged in a prior unlawful search. Therefore, the trial court's expansive reading of the dictum in Murray is inconsistent with *136 the overall tenor of the opinion and with prior case law.
This conclusion is supported by decisions in the lower federal courts and other state courts. See, e.g., United States v. Markling, 7 F.3d 1309, 1314-17 (7th Cir.1993); Restrepo, supra, 966 F.2d 964; Herrold, supra, 962 F.2d 1131; United States v. Gillenwaters, 890 F.2d 679 (4th Cir.1989); United States v. Veillette, 778 F.2d 899, 903-04 (1st Cir.1985); People v. Bielawski, 255 Ill.App. 3d 635, 194 Ill.Dec. 373, 627 N.E.2d 710 (Ill.Ct.App.), appeal denied, 156 Ill.2d 559, 202 Ill.Dec. 924, 638 N.E.2d 1118 (Ill.1994); Klingenstein v. State, 330 Md. 402, 624 A.2d 532, 538(Md.), cert. denied, 510 U.S. 918, 114 S.Ct. 312, 126 L. Ed.2d 259 (1993). In Restrepo, the Fifth Circuit stated:
[T]he district court interpreted Murray`s phrase"or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant"as requiring the court to consider the actual effect of the illegally-acquired information in Officer Wooley's warrant affidavit on the decision of this particular magistrate judge to issue the warrant to search Regency. Although we acknowledge that the district court's interpretation is at least facially consistent with Justice Scalia's statement in Murray, we believe... that the Supreme Court never intended this interpretation.
Prior to Murray, this and other circuits had adopted variations on the rule that evidence obtained in an illegal search is first excised from the warrant affidavit, after which the expurgated version is evaluated for probable cause. This approach was simply the logical extension of the rule in Franks that warrant affidavits containing false statements are to be afforded this treatment.
....
Nothing in Murrayother than perhaps the unfortunate sentence fragment in dispute hereindicates that the Supreme Court intended to reject the prevailing Franks-inspired rules. The relevant phrase ("affected his decision to issue the warrant"), almost certainly was simply a paraphrasealbeit a confusing one when considered noncontextuallyof the approach long sanctioned in the circuits.... In addition, we find no other post-Murray circuit cases concerning the independent source doctrine that have interpreted Murray as refuting their pre-Murray holdings that inclusion of illegally-acquired information on a warrant affidavit does not invalidate the warrant if the affidavit's other averments set forth probable cause.

[966 F.2d at 969-70.]
We are in complete agreement with this analysis. Therefore, we hold that Murray did not change the rule that the validity of a search warrant issued on the basis of an affidavit containing unlawfully obtained information turns on whether the other lawfully obtained information set forth in the affidavit establishes the probable cause required to justify the search.
In this case, the warrant affidavit contained lawfully obtained information which established probable cause to believe that Room 307 at the Regency Motel contained property stolen in the series of recent burglaries in Lakewood and Holmdel. The affidavit recited that various items of personal property had been taken in the burglaries, including binoculars, cassette players, CD players, video games, liquor and jewelry. It also stated that Johnson had been arrested while attempting to sell jewelry taken in one of the burglaries, and that Johnson had been residing with defendant in Room 307 of the Regency Motel. In addition, the affidavit indicated that even though some of the jewelry taken in the burglaries had been sold to a jewelry store, most of the stolen property had not yet been recovered. Therefore, we are satisfied that the affidavit set forth facts, independent of the evidence obtained in the initial entry into the motel room, which demonstrated "a fair probability that contraband or evidence of crime would be found in [Room 307].'" State v. Demeter, 124 N.J. 374, 380-81, 590 A.2d 1179 (1991) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L. Ed.2d 527, 548 (1983)).
As an alternative ground for affirmance, defendant argues that the State failed to show that the police officers' decision to apply for a warrant was not prompted by what they observed during their initial entry into the motel room. In support of this argument, defendant relies upon the part of the *137 previously quoted passage from Murray which states that evidence obtained pursuant to a warrant is not derived from a "genuinely independent source ... if the [police officers'] decision to seek the warrant was prompted by what they had seen during the initial [unlawful] entry." 487 U.S. at 542, 108 S.Ct. at 2536, 101 L. Ed.2d at 483; see generally 5 LaFave, supra, § 11.4(f), at 296-308. However, the testimony at the hearing on the motion to suppress clearly indicates that the Howell Township Police decided to take whatever steps were necessary to search defendant's motel room as soon as they were informed that Johnson had been arrested while attempting to sell some of the jewelry taken in the burglaries and that he was residing with defendant at the Regency Motel. In fact, the police would have been negligent if they had failed to seek authorization to search Johnson's only known residence for the other property taken in the burglaries. Therefore, we have no doubt that even if the police had not observed some of the stolen items in plain view when they entered the motel room under the authority of arrest warrants for a person with the same name as defendant, they still would have applied for a warrant to search the room. See Herrold, supra, 962 F.2d at 1140-41.
Finally, we note that this is not a case where the police deliberately conducted an unlawful search for the purpose of confirming the presence of contraband before applying for a warrant. Rather, the information received by the police concerning the arrest warrants for a person with the same name as defendant, whose last known address was the motel in which defendant was registered, provided the police with objectively reasonable grounds for believing that they were authorized to enter the motel room to execute the warrants. Consequently, there is no basis for arguing that the initial entry into the motel room constituted such flagrant police misconduct that the evidence subsequently obtained pursuant to the warrant should be suppressed to deter similar future violations of constitutional rights.[2]Cf. State v. Johnson, 118 N.J. 639, 653, 573 A.2d 909 (1990) (holding that one factor in the determination of whether evidence is the "fruit" of illegal police conduct is "the flagrancy and purpose of the police misconduct") (citing Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L. Ed.2d 416, 427 (1975)). Therefore, this case is not "an example of a `search first, warrant later [police] mentality.'" Murray, supra, 487 U.S. at 540 n. 2, 108 S.Ct. at 2535, 101 L. Ed.2d at 482; see also State v. Nichols, 253 N.J.Super. 273, 279-80, 601 A.2d 753 (App.Div.1992).
Accordingly, we reverse the order granting defendant's motion to suppress and remand the case for trial.
NOTES
[1] Subsequent to Franks, the Supreme Court of New Jersey held that "New Jersey courts, in entertaining veracity challenges [under the New Jersey Constitution], need go no further than is required as a matter of Federal Constitutional law by Franks." State v. Howery, 80 N.J. 563, 568, 404 A.2d 632, cert. denied, 444 U.S. 994, 100 S.Ct. 527, 62 L. Ed.2d 424 (1979).
[2] We note that there are decisions in the federal courts and other states which have upheld the validity of an arrest and incidental search of a person mistakenly identified as the person named in an arrest warrant based upon a showing that police reasonably believed that the person arrested was the person sought. See, e.g., United States v. Marshall, 79 F.3d 68 (7th Cir.), cert. denied,____ U.S. ____, 117 S.Ct. 155, 136 L.Ed. 2d 100 (1996); United States v. Glover, 725 F.2d 120 (D.C.Cir.), cert. denied, 466 U.S. 905, 104 S.Ct. 1682, 80 L. Ed.2d 157 (1984); Sanders v. United States, 339 A.2d 373 (D.C.1975); City of Tulsa v. Clifford, 787 P.2d 1285 (Okla.Crim.App. 1990); Shears v. Commonwealth, 23 Va.App. 394, 477 S.E.2d 309, 311 (Va.Ct.App.1996); see generally 3 LaFave, supra, § 5.1(g), at 56-57. In view of the State's concession that the police officers' initial entry into defendant's motel room was unlawful, we have no occasion to consider whether that entry could be found lawful under this line of authority.