**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1124-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RANDY VIDAL,

     Defendant-Appellant.

_____

> Argued November 18, 2019 – Decided November 26, 2019
>
> Before Judges Fasciale and Rothstadt.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-04-0523.
>
> Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the brief).
>
> Erin M. Campbell, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Erin M. Campbell, on the brief).

PER CURIAM

After pleading guilty, defendant appeals from his conviction for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1). He focuses on the judge's denial of his motion to suppress, contending that the judge erred by finding the independent source doctrine applied. He primarily maintains that police engaged in flagrant misconduct by opening the basement apartment door to verify it was the apartment in his Facebook pictures that depicted defendant possessing guns and marijuana.

On appeal, defendant argues:

> POINT I
>
> THE EVIDENCE FOUND IN THE BASEMENT APARTMENT MUST BE SUPPRESSED AS THE FRUIT OF AN UNLAWFUL SEARCH BECAUSE POLICE UNLAWFULLY OPENED THE APARTMENT DOOR AND THEN RELIED ON WHAT THEY SAW IN GETTING A SEARCH WARRANT.

We remand for the judge to make specific findings and conclusions of law as to prong three of the independent source doctrine, and to consider the State's argument, raised for the first time, that the inevitable discovery doctrine is a separate basis to deny defendant's motion to suppress.

Police received an anonymous tip that a "resident [was] posting pictures with guns on Facebook," which included the link to a Facebook profile. Police

discovered that defendant owned the Facebook profiles, that he was the person holding guns and possessing marijuana in the pictures, and that he was a convicted felon forbidden to possess weapons. Police initially identified defendant's residence, which appeared in several of the Facebook photos, as apartment number two that was located on the second floor. Sergeant Thomas McVicar applied for a search warrant of defendant's person and apartment number two. Police later discovered that defendant did not live in apartment number two, but instead in the building's basement apartment.

They reached that discovery after Sergeant McVicar witnessed defendant leave the building by exiting from an alleyway. Based on his familiarity with similar apartment buildings, Sergeant McVicar concluded that the alleyway led to a basement apartment.

A few blocks away from the apartment building, other officers arrested defendant on an open municipal warrant. At that time, defendant said he lived in the building's basement apartment. Sergeant McVicar and other officers went to the building's side door, located the basement apartment, and opened the door to confirm the basement apartment was the apartment in defendant's Facebook pictures and "to make sure there was nobody there." Thereafter, he prepared a new search warrant affidavit.

3

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution both safeguard the right of all individuals to be secure in their houses against unreasonable searches and seizures." State v. Shaw, 237 N.J. 588, 607-08 (2019) (citing State v. Hathaway, 222 N.J. 453, 468 (2015) (citations omitted)). "When law enforcement undertakes a search without a warrant, that search is presumptively unlawful." Id. at 608 (citing State v. Pineiro, 181 N.J. 13, 19 (2004)). To avoid exclusion, the State must prove the search fell within an exception to the exclusionary rule. See State v. Bryant, 227 N.J. 60, 71 (2016) (stating "[w]hen the seizure of evidence is the result of the State's unconstitutional action, the principal remedy . . . is exclusion of the evidence seized").

Here, the parties argued whether the independent source doctrine applied. This doctrine "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." State v. Holland, 176 N.J. 344, 348 (2003) (quoting Nix v. Williams, 467 U.S. 431, 443 (1984)). The doctrine has three prongs:

> First, the State must demonstrate that probable cause existed to conduct the challenged search without the unlawfully obtained information. It must make that showing by relying on factors wholly independent from the knowledge, evidence, or other information acquired as a result of the prior illegal search. Second, the State

must demonstrate in accordance with an elevated standard of proof, namely, by clear and convincing evidence, that the police would have sought a warrant without the tainted knowledge or evidence that they previously had acquired or viewed. Third, regardless of the strength of their proofs under the first and second prongs, [the State] must demonstrate by the same enhanced standard that the <u>initial impermissible search was not the product of flagrant police misconduct</u>.

[<u>Id.</u> at 360-61 (emphasis added).]

The State must establish all three prongs by clear and convincing evidence, and its failure to satisfy any one prong will result in suppression. <u>Id.</u> at 345. Although prong three is the focus of this appeal, we address the first and second prongs as well.

As to the first prong, defendant argues Sergeant McVicar "heavily relied on the information he learned by illegally opening the door to the basement apartment" when he applied for the second search warrant. Specifically, defendant argues Sergeant McVicar lacked probable cause for the search warrant of the basement apartment absent his unlawful entry—the opening of the door—into the apartment.

Probable cause is "more than mere suspicion but less than legal evidence necessary to convict." <u>Sanducci v. City of Hoboken</u>, 315 N.J. Super. 475, 480 (App. Div. 1998) (internal quotation and citation omitted). It is "well-grounded

A-1124-18T4

suspicion" that an offense has been committed. State v. Moore, 181 N.J. 40, 45 (2004) (citation omitted). "Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge[,] and of which they had reasonably trustworthy information[,] [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (second and fifth alteration in original) (citation omitted). In determining whether probable cause existed, a judge should consider the totality of the circumstances including the officer's "common and specialized experience[.]" Schneider v. Simonini, 163 N.J. 336, 362 (2000) (internal quotation and citation omitted).

Probable cause existed here. Sergeant McVicar viewed the photographs on defendant's Facebook pages, which showed defendant had guns and marijuana. He researched defendant's residence on LexisNexis and the CAD system, and he identified defendant's apartment building. Officers observed defendant leaving from the front door of the apartment building. Sergeant McVicar also saw defendant leave from the building's alleyway, and he said this observation led him to believe that defendant exited from the basement apartment. Defendant said he lived at this basement apartment during his arrest—before the unlawful entry.

Further, the judge found there was probable cause for the second search warrant, stating:

> [T]he Lexis Nexis search revealed the [apartment building] as [d]efendant's address and [Sergeant] McVicar's observations independently give rise to probable cause when viewed in conjunction with the Facebook photos showing [d]efendant's name. Moreover, given that [Sergeant] McVicar was familiar with the layout of buildings like [this one], and the fact that [Sergeant] McVicar verified that [d]efendant did not live in [a]partment [two], he reasonably believed that [d]efendant could have come out of the basement apartment. This belief is also reasonable regardless of whether [d]efendant stated that he lived in the basement apartment or not.

Thus, Sergeant McVicar had a reasonable belief that defendant resided in the basement apartment and that the guns may be present in this apartment.

In Holland, 176 N.J. at 348, the Supreme Court addressed the clear and convincing evidence standard as to prong two of the independent source doctrine. In this case, police went to assist an ambulance crew at a duplex, where the officer noted a strong odor of burning marijuana and called for back-up to determine the source of the odor. Id. at 349. Three other officers arrived and concluded that the odor was coming from the adjoining residence of the duplex. Ibid. The defendant ran out of that adjoining residence and dropped marijuana on the ground. Id. at 349-50. Police then entered the residence to

7

investigate further, finding marijuana and drug paraphernalia.  Id. at 350-51.

After completing their investigation, a detective applied for a search warrant

based on the officers' observations.  Id. at 351.  The Court found the State failed

to satisfy prong two because the smell of marijuana and the marijuana that the

defendant dropped were insufficient to establish that police would have obtained

a search warrant absent their unlawful search.  Id. at 364.  Further, the Court

emphasized there was a statement from an officer that police sought a search

warrant based on what they saw in the residence.  Ibid.

Here, the judge did not outline her specific findings as to prong two,

noting that prong two was not in contention.  But the judge did find that there

was "not enough credible evidence to support that the basement apartment was

searched prior to obtaining [the second search warrant]."  Unlike in Holland,

officers already had a search warrant to search defendant's residence—the

second search warrant only changed defendant's residence from "#2" to

"basement apartment."  Also different from Holland, officers did not "seize" any

physical evidence when they opened the basement door:  they did not see the

gun or marijuana that was subsequently seized during the second search

warrant's execution.  Finally, the judge found that Sergeant McVicar and other

officers only opened the door to confirm it was the apartment in defendant's

8

Facebook pictures. Thus, there exists clear and convincing credible evidence that Sergeant McVicar would have applied for the search warrant of the basement apartment absent opening the basement door.

But as to the third prong, the record must be more developed. Defendant contends that the police engaged in flagrant misconduct when they opened the basement apartment's door to confirm it was the apartment in defendant's Facebook pictures. He further argues that Sergeant McVicar engaged in flagrant misconduct when he made false statements in his search warrant application, specifically that officers did not execute the search warrant for apartment number two.

"Flagrancy is a high bar, requiring active disregard of proper procedure, or overt attempts to undermine constitutional protections." State v. Camey, ___ N.J. ___, ___ (2019) (slip op. at 46) (citing State v. Smith, 212 N.J. 365, 398 (2012)). The Appellate Division addressed the concept of flagrant misconduct in State v. Chaney, 318 N.J. Super. 217 (App. Div. 1999). In that case, police went to execute an arrest warrant of the defendant at a local motel, which was the defendant's last known address. Id. at 220. Officers went to the defendant's motel room and knocked on the door; they entered when they received no response. Ibid. While inside, officers observed stolen property, and based on

this information, applied for a warrant to search the motel room for the stolen property. Ibid. The defendant filed a motion to suppress the evidence, arguing that police engaged in flagrant misconduct when they entered the motel room. Id. at 219. We stated suppression was unwarranted, explaining:

> [T]his is not a case where the police deliberately conducted an unlawful search for the purpose of confirming the presence of contraband before applying for a warrant. Rather, the information received by the police concerning the arrest warrants for a person with the same name as [the] defendant, whose last known address was the motel in which [the] defendant was registered, provided the police with <u>objectively reasonable grounds for believing that they were authorized to enter</u> the motel room to execute the warrants.
>
> [Id. at 226 (emphasis added).]

Here, Sergeant McVicar testified:

> When you open . . . that door, it's a small apartment. It's a basement apartment. I . . . don't know legal or illegal, but sort of, you know, it's where the garage and the apartments would usually be. When you open that door, the ceiling's kind of low and you'd look right at the apartment. [R]ight there is that table that we saw [defendant] sitting at in the numerous photographs and pictures. Behind the table, we could see the cabinets and the . . . appliances which were identified as being where we believed that he lived[,] and there was identified as . . . that they were the cabinets and the appliances that we had observed in the numerous photos. And then you could see that there [were] two bedrooms. And then, not that far away, only about five

feet across the living room, there's two more bedrooms right there. And we could see there was nobody in the apartment.

Similar to Chaney, the judge found that officers did not enter the basement apartment to confirm the presence of contraband. Sergeant McVicar testified, and the judge found credible, that officers opened the basement apartment's door to confirm it was the apartment in defendant's Facebook pictures and to confirm defendant's girlfriend was not present. The judge also found there was not enough "credible evidence to support that the basement apartment was searched prior to obtaining [the second search warrant]."

The judge however did not make findings of fact and conclusions of law about whether the "initial impermissible [opening of the door] was not the product of flagrant police misconduct" as outlined in Holland. In fact, as to prong three, the entirety of the judge's findings were:

> Indeed, the officers had a [w]arrant to search [apartment number two]. Therefore, they lawfully entered [the witness's] apartment and did not commit flagrant misconduct in searching [apartment number two]. Further . . . there is not enough credible evidence to support that the basement apartment was searched prior to obtaining [the second search warrant.]

Thus, we conclude the judge did not make sufficient findings and conclusions as to the third prong.

We reject defendant's argument that Sergeant McVicar engaged in flagrant misconduct by making false statements in his second search warrant application. The judge held a three-day hearing on defendant's motion to suppress. Sergeant McVicar stated in his affidavit, and testified at the hearing, that he and other officers did not search apartment number two once they realized it was not the apartment in defendant's Facebook pictures. However, the judge found credible another witness who testified that officers searched apartment number two. The judge determined Sergeant McVicar did not make false statements in his application, finding: "[the witness's] testimony does not prove that [Sergeant] McVicar made <u>material</u> misstatements." (Emphasis added). Moreover, the judge noted that the first search warrant allowed officers to search apartment number two. This finding of fact is entitled to deference. State v. Elders, 192 N.J. 224, 244 (2007).

Finally, in this appeal, the State argues for the first time that "discovery of the proper apartment was inevitable."[1] The independent source doctrine and the inevitable discovery doctrine are two separate exceptions to the exclusionary

---

[1] We leave the details of that argument—and the related consequences, such as the discovery of the gun and marijuana were likewise inevitable—to the discretion of the judge during the remand. Of course, the parties are free to make any contentions that are warranted on remand.

rule. <u>See</u> <u>Camey</u>, ___ N.J. at ___ (slip op. at 46) (describing separate tests for the doctrines). On remand, the State can make this contention in the first instance.

We therefore remand for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1124-18T4