**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4110-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAOUL MONTALVO,

    Defendant-Appellant.

_____

Submitted May 27, 2020 – Decided June 26, 2020

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-05-1527.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Mareka Amelia Watson, Deputy Public Defender II, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following denial of his motion to suppress evidence seized from his home pursuant to a search warrant, defendant Saoul Montalvo pled guilty to second- and fourth-degree weapons offenses. Defendant was sentenced to an aggregate prison term of seven years; he must serve forty-two months before he is eligible for parole pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

The sole issue on this appeal is whether the Law Division judge erred in upholding the search under the independent source doctrine after finding the police improperly entered defendant's apartment to conduct a protective sweep before the warrant was issued. Defendant raises a single point for our consideration:

> THE INDEPENDENT SOURCE DOCTRINE DOES NOT EXCUSE THE WARRANTLESS SEARCH OF DEFENDANT'S HOME, WHICH WAS ILLEGALLY SEARCHED PURSUANT TO THE POLICE DEPARTMENT'S "NORMAL PROCEDURE" BEFORE APPLYING FOR A WARRANT.

We reject defendant's contentions and affirm.

On February 29, 2016, at 6:10 p.m., another Law Division judge issued the warrant, which was supported by the affidavit of Noel Mendez, a detective assigned to the Essex County Sherriff's Bureau of Narcotics (SBON). According to the affidavit, earlier that day, a confidential informant told Mendez a black male known by the street name, "Tall Dog," was selling crack cocaine

from his apartment in Newark. The informant gave Mendez an exact street address and apartment number for the residence, and said it was located on the first floor and faced a particular avenue. The informant also provided identifying information about the suspect, including his specific height, approximate weight and age, and that he had a "bald head and thin goatee." The informant told Mendez the suspect "ran his narcotic distribution scheme at all hours of the day and only dealt with people he knew." Mendez averred the informant had "provided reliable information in the past resulting in the arrest of numerous individuals for violating New Jersey's narcotics laws."

At the two-day testimonial hearing, Bloomfield Police Detective Anthony Piccinno, who was assigned to the SBON at the time of the incident, was the only witness to testify on behalf of the State.[1] Midday on February 29, after the informant told Mendez the details summarized above, Piccinno and Mendez set up "a clear and unobstructed view of [defendant's] residence." From his vantage point – in an undercover vehicle located about twenty-five yards from the

---

[1] Defendant did not testify, but presented the testimony of two witnesses, who attempted to establish defendant was at a fitness center at the time of the incident. Despite three attempts by defense counsel to subpoena Mendez, he did not appear. The motion judge denied defendant's request for an adverse inference charge regarding Mendez's non-appearance. Defendant does not appeal that determination.

building – Piccinno saw "an individual peering out the window," who matched the informant's description of defendant "from the neck up." During the detectives' surveillance, a black Kia automobile driven by Antonio Brown pulled up and parked nearby. From the "bay window," defendant gestured to Brown, who turned the Kia around and parked in front of defendant's building.

Defendant approached Brown's car and the two men exchanged cash and "an unknown item." Based on his training and experience, Piccinno believed defendant and Brown had engaged in a narcotics transaction. Within minutes, backup detectives arrived; defendant and Brown were searched incident to their ensuing arrests. Police seized $201.42 and a set of keys from defendant, and a bag of crack cocaine and $379 from Brown.

Piccinno, Mendez, and two other detectives, including a sergeant, entered the building "to secure the residence because" they "were applying for an emergent search warrant." Piccinno explained the basis for the application was "[t]he information that [they] received . . . that the sales were being made out of . . . the apartment, or residence. And they were being made at all times a [sic] day to . . . people that [defendant] pretty much knew, not strangers." Piccinno testified defendant's sale of narcotics to Brown was "part of the basis for [the] application."

Piccinno described the building as a "boarding house," with a common hallway that led to defendant's room at its end; four people were present in the hallway; the door to defendant's room was open. The detectives entered the room, which only contained "an armoire, a nightstand, and a bed." They conducted "a cursory search to make sure there was [sic] no individuals inside. Just basically, you know stepped in. 'Yo. Yo. Yo.' You know, yelled. And as [they] stepped inside, [they] observed . . . a silver and black handgun on the nightstand to the right of the bed." The search was "cursory" "to be sure that no one [wa]s in the apartment for officer safety, and the destruction of evidence." When asked by the prosecutor, whether that "action" was "part of the normal procedure" when "apply[ing] for an emergent search . . . warrant of a location," Piccinni stated, "yes[, w]e secure the premises." Police did not seize the gun during that search.

In addition to detailing the informant's tip in his affidavit, Mendez described "the sequence of events" that culminated in defendant's arrest, which was consistent with Piccinno's testimony at the hearing. Mendez described the detectives' observations of the handgun – and additional drugs – as follows:

> When the detectives arrived at the location, the front door was open. Detectives were able to see in plain view a black and silver colored handgun on top of a small table by the bed and additional controlled

> dangerous substances in plain view on top of the dresser. Detectives did look for additional individuals in the apartment with negative results. The apartment was then secured with Detectives Rickards and Zepeda standing guard.

The affidavit did not mention that the detectives entered the apartment to secure it before they saw the handgun and drugs. After the warrant was issued, the police seized those items from defendant's premises. The ensuing indictment charged defendant with seventeen counts of drug and weapons offenses.[2]

Following argument and supplemental briefing, the motion judge issued a cogent written decision, denying defendant's suppression motion. In doing so, the judge concluded the protective sweep was not justified under State v. Davila, 203 N.J. 97, 101 (2010), where the Supreme Court recognized a protective sweep is permitted when: "(1) police officers are lawfully within private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger." Id. at 102.

The judge correctly determined police had not lawfully entered defendant's home because they did not have a search warrant or consent to enter,

---

[2] Brown was charged with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a) in the same indictment as defendant, and joined in defendant's suppression motion; he is not a party to this appeal.

and Piccinno did not articulate reasonable suspicion that the premises "harbored an individual posing a danger to law enforcement." Because detectives had not lawfully entered defendant's room, the judge accordingly determined the gun and drugs were not lawfully seized pursuant to the plain view exception to the warrant requirement.

But the motion judge found the evidence was admissible under the independent source doctrine. Citing State v. Holland, 176 N.J. 344, 354 (2003), the judge explained the doctrine may be invoked if "the State can prove that incriminating evidence was seized lawfully" even though "an earlier constitutional violation had occurred." The judge summarized his understanding of the three elements of the doctrine, recognized by our Supreme Court in Holland: "(1) the State had probable cause to conduct the search at issue absent the unlawfully-obtained information; (2) the State, 'without the tainted knowledge or evidence,' would have sought a proper warrant; and (3) the initial impermissible search was 'not the product of flagrant police misconduct.'" See id. at 360-61.

Applying that test, the motion judge found "the State had probable cause to conduct the search absent the unlawful entry and tainted observation of the silver handgun and [drugs] on the dresser." Citing our decision in State v.

7

Ortense, 174 N.J. Super. 453 (App. Div. 1980), the judge recognized Mendez's application mixed lawfully and unlawfully seized evidence, but concluded the officers "had probable cause to secure a search warrant absent [their tainted] observations."

The judge further determined the detectives' "quick cursory sweep," during which they "did not seize any items" did not amount to flagrant police misconduct. Citing Nix v. Williams, 467 U.S. 431, 443 (1984), the judge concluded the State should not be placed in a worse position due to the earlier police error because an independent source existed for the discovery of the evidence. The judge elaborated:

> The combined evidence of the [informant's] tip of a man known as "Tall Dog" selling drugs from his apartment; detectives while conducting surveillance confirming that [d]efendant . . . matched the exact description given by the [informant]; detectives observing, with a clear and unobstructed view, [d]efendant . . . signal to . . . Brown from the window inside [defendant's] apartment; detectives observing [d]efendant . . . exit the apartment and engage in [a] hand[-]to[-]hand narcotics transaction outside his residence; [and] detectives recovering drugs from a search incident to arrest, alone created probable cause to issue the search warrant.

The motion judge therefore found no reason to suppress evidence that the police would have discovered wholly independent of the unlawful entry. In

8

doing so, the judge rejected defendant's contentions that the detectives gained access to his locked door with the keys they took from defendant following his arrest, and the "detectives used the illegal search to secure a warrant for the later search." Instead, the judge found credible Piccinno's testimony, noting the detective "spoke clearly and with a calm demeanor." Observing "tough, rapid [-]fire questions" were posed on cross-examination, the judge found Piccinno's "testimony did not waiver." The judge expressly found Piccinno "did not testify with an intent to deceive or be elusive," concluding "nothing was presented" that caused the judge to question the detective's credibility.

Our review of a trial court's decision on a suppression motion is circumscribed. See State v. Robinson, 200 N.J. 1, 15 (2009). We defer to the court's factual and credibility findings "so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). Deference is afforded because the "findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). We disregard a trial court's factual and credibility findings only if clearly mistaken. State v. Hubbard, 222 N.J. 249,

262 (2015).  The legal conclusions of the trial court, however, are reviewed de novo.  Id. at 263.

We need not reiterate the well-established search and seizure requirements that weave the framework of our federal and state constitutions.  See U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  It is well settled that a warrantless search is "presumptively unlawful."  State v. Shaw, 237 N.J. 588, 608 (2019).  To avoid exclusion, the State must prove the search fell within an exception to the exclusionary rule.  See State v. Bryant, 227 N.J. 60, 71 (2016).  One such exception is the independent source doctrine, Holland, 176 N.J. at 354, the application of which the motion judge correctly summarized.  We further note the State must establish all three prongs of the test enunciated by the Court in Holland by clear and convincing evidence, and its failure to satisfy any one prong will result in suppression.  176 N.J at 362-63.

On this appeal, defendant challenges the judge's findings on the first and third Holland factors, claiming:  "without the unlawful observation of the handgun on the dresser, there was no probable cause to search [defendant]'s apartment" (factor one); and "the police misconduct was flagrant" (factor

A-4110-17T2

three).[3]  As to the first factor, defendant challenges the reliability of the informant's "tip."  Regarding the third factor, defendant argues police improperly entered his home, in part, to prevent the destruction of evidence, which is not a valid reason for entry under the protective sweep doctrine.

As to the first factor, in many instances, the unlawfully obtained information becomes part of the affidavit proffered in support of the search warrant.  See, e.g., id. at 349-51 (describing unlawfully obtained information that was included in the search warrant application).  Generally speaking, "if an affidavit submitted in support of an application for a search warrant contains lawfully obtained information which establishes the probable cause required for a search, evidence obtained pursuant to the warrant will not be suppressed on the ground that the affidavit also contains false or unlawfully obtained information."  State v. Chaney, 318 N.J. Super. 217, 221 (App. Div. 1999) (citations omitted); see also State v. Howery, 80 N.J. 563, 567 (1979)

---

[3]  Although defendant does not challenge the second Holland factor – and the fact that police in this case ultimately applied for a warrant is not dispositive that they would have done so absent the "knowledge or evidence that they previously had acquired or viewed," 176 N.J. at 361 – Piccinno testified before they entered defendant's home, the basis for the warrant application was the information provided by the informant and the corroborating sale in police presence.

(permitting judicial excising of an affiant's misstatements to determine whether probable cause exists to support the search warrant without those statements).

Guided by those principles, we are convinced the motion judge properly applied the first Holland factor and correctly determined the detectives had independent, probable cause to obtain a valid search warrant apart from the inclusion of the tainted handgun and drugs observed in defendant's home during the detectives' unauthorized protective sweep. See Chaney, 318 N.J. Super. at 221. That other information – as accurately summarized by the motion judge – included the specific details provided by the informant, which were corroborated shortly thereafter by the detectives' observations. The motion judge expressly found credible Piccinno's testimony concerning those observations, thereby rendering the informant's "tip" reliable.

Turning to the third Holland factor, defendant claims the police misconduct was flagrant because the law prescribing protective sweeps is well settled. According to defendant, "even more troubling, Piccinno testified that the police department, as a matter of 'normal procedure,' perform [sic] these unlawful 'protective sweeps' whenever they [sic] intend on obtaining an emergent search warrant." We are not persuaded by either contention and examine each in turn.

"Flagrancy" has been described as "a high bar, requiring active disregard of proper procedure, or overt attempts to undermine constitutional protections." State v. Camey, 239 N.J. 282, 310 (2019) (applying the independent source doctrine to DNA buccal swab searches). Similarly, Merriam-Webster's dictionary defines "flagrant" as "conspicuously offensive[;] . . . so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality." Flagrant, Merriam-Webster, https://www.merriam-webster.com /dictionary/flagrant (last accessed June 9, 2020).

In his analysis, the motion judge found the impermissible protective sweep did not rise to flagrant police misconduct because the sweep was "quick" and "cursory" and the detectives "did not seize any items." Notably, the judge credited Piccinno's testimony that the door was open when police entered. Those findings are entitled to our deference. Gamble, 218 N.J. at 424. We recognize, however, that the result likely would have been different had the sweep occurred after our Supreme Court's decision in Brown v. State, 230 N.J. 84, 110-12 (2017) (holding that absent "true exigency and probable cause" police may not enter a residence to secure it to prevent the destruction of evidence, while awaiting approval of a search warrant). We fully expect that by now – more than four years after the search in this incident – the Essex County

A-4110-17T2

Prosecutor and Sheriff have instructed their personnel in accordance with the Court's holding in Brown.

Turning to defendant's belated contention concerning the "normal procedure" employed by the detectives when applying for an emergent search warrant, we observe Piccinno's answer to the prosecutor's inquiry regarding that procedure was vague and not fully explored in the record:

> PROSECUTOR: All right, so is this part of the normal procedure, that when you apply for an emergent search -- search warrant of a location to take the action that you did?
>
> PICCINNO: We sec -- yes. We secure the premises.

No other questions were elicited on direct or cross-examination regarding the SBON's standard operating procedure for conducting protective sweeps before obtaining a search warrant. We cannot determine from that single response whether the Davila factors were met before Piccinno and the SBON detectives conducted protective sweeps in prior cases. In our view, Piccinno's response does not support defendant's argument that the SBON "operated as though there is a protective sweep exception to the warrant requirement." In view of the totality of circumstances in this case, defendant has not established that the judge's ruling was clearly mistaken, warranting our intervention. Hubbard, 222 N.J. at 262.

We are satisfied that under the test set forth in <u>Holland</u>, the informant's information – as corroborated by the detectives' observations and the sale of narcotics from defendant to Brown – established probable cause for issuance of the warrant, without the evidence the detectives observed when they improperly entered and conducted a protective sweep of defendant's home. Because the evidence at issue would have been discovered and lawfully seized upon execution of that warrant, we uphold the denial of the suppression motion based on the independent source doctrine.

To the extent not specifically addressed, defendant's remaining arguments are without sufficient merit to warrant discussion in this written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4110-17T2